J. S. DOUGLASS v. F. M. MUNDINE ET AL.

(Case No. 3388.)

1. PRACTICE IN SUPREME COURT.— It being manifest that a case was decided on a certain issue, the question whether the court erred in admitting evidence on a different issue becomes immaterial, and will not be considered.

2. COLLATERALS — NEGLIGENCE.— A creditor who fails to use ordinary diligence in the collection of claims on solvent parties, sufficient in amount to satisfy his demand, transferred and delivered to him as collaterals, and their payment guarantied by the debtor, and who by his fault causes these claims to become worthless, is responsible to the debtor for their loss.

APPEAL from Lee. Tried below before the Hon. E. B. Turner.

Douglass sued F. M. and J. C. Mundine, July 17, 1876, upon the following note, viz.:

" $1,516.05. LEXINGTON, January 1, 1874.

"One day after date we, or either of us, promise to pay J. D. Douglass or order, fifteen hundred and sixteen and .05-100 dollars gold, bearing twelve per cent. interest from date until value received.

(Signed) " F. M. MUNDINE,
" J. C. MUNDINE."

After entering all proper credits upon the note, the sum remaining due at date of trial of the cause amounted to $968.08.

In extinguishment of the latter amount, and of any further liability on the note, appellees interposed separate and distinct defenses. F. M. Mundine, one of the joint and several makers of the note, alleged in his answer that he had, on the 25th of February, 1874, assigned to appellant certain solvent notes by way of collateral security, the amount of these collaterals being largely in excess of the balance due on the note sued on. He further alleges that, by the exercise of due diligence on the part of appellant, these collateral notes could have been collected, but, owing to the gross negligence and laches of appellant, in failing to pursue the makers thereof, they became insolvent, and the collaterals utterly worthless.

J. C. Mundine, who appeared as a principal upon the note, averred in his answer that he was in fact a surety, and, in consideration of the extension of time for the payment of the note, granted by appellant F. M. Mundine, upon a valid consideration, his liability was discharged.

A trial was had September 12, 1876, before the court, and judgment was rendered that the plaintiff take nothing by his suit, the defendants go hence, etc., and recover their costs from plaintiff; from which this appeal was taken.

The instrument referred to in the opinion professes to transfer and deliver as collateral security certain promissory notes then past due, the payment of which was guarantied, giving authority to collect them, and out of the proceeds to pay all reasonable charges for collecting.

*A. J. Peeler* and *T. S. Maxey*, for appellant.— . . A glance at the case of Johnston v. Mills, 25 Tex., 704, cited and relied upon by counsel on the other side, will show that it differs materially from the case at bar. Johnston & Dewberry, being indebted on open account to R. & D. G. Mills, transferred and assigned to them (R. & D. G. M.), by an instrument in writing, certain notes. R. & D. G. Mills received the notes as conditional payment of Johnston & Dewberry's debt, and gave them credit on their account for the amount of it. The court say (pp. 716, 717): "The object of the whole arrangement, as developed upon the face of the contract, was for Johnston & Dewberry to extinguish this amount of their debt due R. & D. G. Mills. For the consummation of this object, R. & D. G. Mills accepted the attitude of being the actor. And Johnston & Dewberry guarantied its ultimate success. Now it must necessarily have been contemplated by the parties to this arrangement, that R. & D. G. Mills, for the consummation of this object, would either exercise the discretion expressly conferred or pursue the usual remedies for collection (according to the exigencies of the case), which their position as the legal owners and holders of the note would enable them to adopt." After stating that Johnston & Dewberry were not ordinary guarantors or sureties, the court say (p. 717): "Theirs (referring to J. & D.) seem to be more in the nature of an original undertaking upon a new consideration, entirely distinct from that of the note. Johnston & Dewberry in fact guarantee the note to be good, and that it can be collected so as to complete the extinguishment of their debt to R. & D. G. Mills. Such a guaranty imposes on R. & D. G. Mills the duty to use

reasonable diligence in the collection by due process of law, in its ordinary and regular course, in the absence of any stipulation to the contrary." (Citing authorities.) In the case at bar, Douglass never took the notes mentioned in the mortgage as a conditional or any other sort of a payment. He never gave the Mundines credit for them. The Mundines remained all the while primarily liable to Douglass on their original note. The Mundines never occupied to Douglass the relation of ordinary guarantors, or as in the case of Johnston & Dewberry, special guarantors, guaranteeing the ultimate collection of the notes in extinguishment of the debt. Douglass held the notes as a mere security. The Mundines could at any time have redeemed them. According to Mundine's own statement, the notes were placed in the hands of Douglass by him, not as a guarantor, or with any view of affecting or extinguishing his liability in whole or in part on the original note, but to obtain an extension of time. If Douglass had consented to look to the mortgage notes for his money, and had contracted with the Mundines to hold them only liable ultimately, and was suing them on their guaranty, then the case of Johnston v. Mills might be applicable, but such we have seen was not the case. If the notes had been of that character of commercial paper requiring something to be done at once by Douglass in order to make the security valid — such as presentment, protest, notice, and the like,— the law would imply that he intended to take the responsibility of doing these things, or else he would not have taken the paper. But in this case, where Mundine's note was past due and all the collaterals were past due, the law raised no such implication.

*John F. Crow* and *Shepard, Garrett & Rector*, for appellee.— The notes were assigned as collateral security. Appellees had the right to insist upon due diligence in their collection. Appellant held them in trust, as it were, for this purpose. Appellant was benefited by the assignment; if he used his power to the disadvantage, or neglected it to the damage of appellees, they are relieved to the extent of that damage. " He who receives any note upon which third persons are responsible, as a conditional payment of a debt due himself, is bound to use due diligence to collect it of the party thereto, at maturity, otherwise by his *laches* the debt will be destroyed." Douglas v. Reynolds, 7 Pet. (U. S.), 128. " In order to entitle the debtor, as owner of the collateral security, to resist the payment of the debt, he must establish that he has sustained damages by reason of the want of due diligence, and due presentment on the part of

the creditor, and to the extent of such damages he may recover compensation, or indemnity, or recoup the amount in any suit for the debt." Story on Prom. Notes, § 284. The rule is the same. in the case of bills of exchange assigned as collateral. Story on Bills, § 372. " In cases of this kind," says Story (on Prom. Notes, § 460), " the same rule has been applied as in guaranty of notes." It is an unquestioned rule of law that a guarantor is relieved from liability by a failure of the holder to use due diligence in the collection, or in demand and notice of failure to collect, to the extent of any loss sustained thereby. 1 Pars. on Cont., ch. 8, sec. 7, pp. 5, 14, 16; 2 id., p. 174; Story on Prom. Notes, secs. 460, 485; Shepard v. Pheavs, 35 Tex., 763; Douglas v. Reynolds, 7 Pet. (U. S.), 126; Johnston v. Mills, 25 Tex., 704.

WATTS, J. COM. APP.— Appellant claims that the court erred in admitting evidence under J. C. Mundine's plea of suretyship, and release by subsequent transactions between appellant and F. M. Mundine. As claimed, there is no evidence in the record tending to show that J. C. Mundine was in fact a surety and not a principal on the note. Manifestly, the case was decided upon the other issue; and if the admission of the evidence objected to was erroneous, then it must be considered an immaterial error.

But one question is presented by the record for disposition, and that is, was the appellant liable to appellee, F. M. Mundine, under the circumstances of this case, for the loss of the collaterals transferred to him?

Resulting from the view of the case entertained by us, it becomes unnecessary to determine the character of the instrument by which the notes were transferred as collateral security to appellant. An examination of that instrument clearly develops the fact that these notes were transferred as collateral security for the note upon which this suit was brought; that F. M. Mundine guarantied the payment of these notes, and authorized appellant to collect the same and apply the proceeds to the payment of the note. in suit. It also appears that, by the terms of that instrument, the legal title to these notes was vested in appellant, and that all control over the same had passed from F. M. Mundine. That these collateral notes became entirely worthless by reason of the negligence of appellant in failing to use ordinary diligence in the collection of the same, is clearly and unmistakably shown by the record. It also appears that he declined to accept from Harrington a deed of trust on valuable land to secure a portion of these notes; that after obtaining judg-

ments on a portion of them, he failed and neglected to have these judgments recorded, so as to secure a lien upon the land of the defendant therein, and that other parties recovered subsequent judgments, under which all the property of that defendant was sold and the proceeds applied to the subsequent judgments. Also, that when executions were issued by the justice of the peace upon these judgments, and were in the hands of the constable, that appellant had them returned without levy, notwithstanding the defendant therein had an abundance of property at the time out of which the judgments could have been made. It also appears from the record that the parties who owe these notes have become hopelessly insolvent, and the notes are entirely worthless.

Under the facts and circumstances of the case, the court below concluded that the appellant was liable for the loss thus occasioned by his negligence. To meet that view of the case, appellant urges as a sound proposition, that, as appellees were in default all the while in not paying the note sued on, and assuming the control of these notes, that no complaint of negligence in the management of them by appellant will be heard from appellees.

The authorities cited to maintain this proposition, among them Schroeppell v. Shaw, 3 Comst. (N. Y.), 456, are cases where sureties have sought to relieve themselves from liability on the ground that the principal had placed in the hands of the creditor some collateral security, which has been lost by reason of the negligence of the creditor. In such cases, courts have generally held that the surety should have paid the debt, and assumed the control of the collateral; failing to do this, that he remained bound for the debt.

Here a different question is presented. The debtor transfers and delivers to the creditor a lot of solvent notes, in amount more than sufficient to pay the debt, and guarantees their payment; by the fault of the creditor these collaterals become entirely worthless. It will not do to say that because the debtor was in default in not paying his note, that therefore the creditor could, without incurring liability, inflict loss upon the debtor through his negligence and fault.

It might be that these collateral notes constituted the available property of the debtor from which he could pay the debt, and perhaps without them he might not be able to pay; it would then be unjust to hold, because he was unable to pay the debt without these collaterals, that therefore the creditor could, by his negligence, impose such a loss without incurring liability for the, same. The debtor could, with much more show of justice, under the circumstances, say to his creditor, you had the absolute control and man-

agement of my available property; why did you not apply it to the payment of your debt against me?

Johnston v. Mills, 25 Tex., 704, in many of its features, is very similar to the case before us, and we think is decisive of it.

We conclude that the judgment of the court below ought to be affirmed.

AFFIRMED.

[Opinion delivered June 16, 1882.]