### MRS. SARAH M. S. HYMAN ET AL. v. JOHN A. GRANT.

#### No. 1877. Decided October 28, 1908.

**1.—Continuance—Diligence—Surprise.**

The filing of a supplemental petition on the eve of trial showing that the defendants, who had pleaded limitation in answer to an action of trespass to try title, held possession as tenants of plaintiff, did not excuse defendants' failure to prepare evidence to meet that issue, since the same facts could have been shown by plaintiff under his original petition. (P. 53.)

**2.—Continuance—Relevancy of Evidence—Landlord and Tenants.**

No error appeared in refusing defendants' application for continuance to obtain evidence to explain a contract of lease which plaintiff did not put in evidence on the trial; nor to obtain evidence of a repudiation of the tenancy by defendant, when no proof that the act of repudiation was brought home to the landlord was sought by the continuance or made on the trial. (P. 53.)

**3.—Attorney and Client—Privileged Communication—Fraud—Limitation.**

The fact that the recorded deed to defendant under which he claimed limitation was made by his attorney, who had no title or claim to the land, and was done to afford a basis for a pretended claim of the land by the client, was not protected from disclosure by the client as a witness because of the privilege of the relation, being a wrongful act and not a privileged communication. (P. 54.)

Question certified from the Court of Civil Appeals for the Second District, in an appeal from Mitchell County.

*McLean & Carlock* and *Miller & Dycus,* for appellants.—Where the plaintiff, amending by supplemental petition, sets up new matter, which tends to surprise the defendant and which he is not prepared to meet, the court should, upon the application of defendant, grant a continuance. Gulf, C. & S. F. Ry. Co. v. Butler, 34 S. W., 758; Greeley v. Carter, 30 S. W., 487.

An attorney-at-law can not divulge anything learned by him in the course of confidential communications between his client and himself as such a communication was privileged. Harris v. Daugherty, 74 Texas, 1; McIntosh v. Moore, 22 Texas Civ. App., 22.

*C. H. Earnest,* for appellee.—The overruling of appellants' application for a continuance was not reversible error, because said application appears to have been predicated on the want of the testimony of one of the appellants negativing a fact which appellants might well have anticipated would be in issue and which could have been in issue without the filing of appellee's supplemental petition, to wit: the fact that appellants were the tenants of appellee. Parks v.

Caudle, 58 Texas, 216; Edwards v. Barwise, 69 Texas, 84; Benavides v. Molino, 60 S. W., 260; Berry v. Jagoe, 45 Texas Civ. App., 6.

The overruling of appellants' notice for continuance was not error, because it is not claimed in said motion that it could be shown by said absent witness, if she were present, that there was ever any open repudiation of the tenancy "brought home to the knowledge of appellee," and the record is absolutely silent as to any repudiation prior to the execution and delivery of the deed by Carter to W. T. Scott, dated March 27, 1899, and this was not shown to have been brought to the attention of appellee, nor any effort made to advise appellee of such fact. Flanagan v. Pearson, 61 Texas, 302.

The second certified question should be answered in the negative because it does not appear that any matter to which witness testified was a privileged communication. Henderson v. Terry, 62 Texas, 281.

MR. JUSTICE BROWN delivered the opinion of the court.

This is a certified question from the Court of Civil Appeals for the Second District. The statement and questions are as follows:

"This is a suit in trespass to try title instituted by appellee on January 14, 1907, against Mrs. Sarah Minna Scott Hyman, formerly wife of W. T. Scott, deceased, and against her present husband, Harry Hyman, and against her minor children by said former marriage, to recover a section of land in Mitchell County. Mr. and Mrs. Hyman on May 24, 1907, answered by pleading not guilty and the statutes of limitation of three, five and ten years. On June 5, 1907, John P. Scott, guardian of said minors, interposed like pleas. On June 26, 1907, appellee filed a supplemental petition to the effect that defendants' possession, if any, was that of tenants of appellee or his vendor. The trial was on June 27, 1907, and resulted in a judgment for appellee from which this appeal has been prosecuted.

"The undisputed evidence shows that appellee claims the section of land in controversy to be one of four hundred patented to the Southern Pacific Railway Company on the 26th day of July, 1862, as a bonus for the completion of the first twenty-five miles of its railroad, and by said railway company conveyed to W. T. Scott, M. J. Hall and Alexander Pope, trustees, and by said trustees to John T. Grant & Company, through and under which appellee claims as a vendee. It seems also undisputed in the evidence that W. T. Scott, the father of the minor appellants and the former husband of Mrs. Hyman, some time about the year 1884 purchased a cattle ranch within the boundaries of which the section in controversy was situated; that W. T. Scott thereafter continued to use the land as a pasture until the year 1888, when he entered into formal written contract for the lease of the section of land in controversy with L. P. Grant, appellee's vendor, for the term of one year, from October 15, 1888, to October 15, 1889, for grazing purposes and for a rental of fifty dollars. This lease was dated in December, 1888, signed by both Scott and L. P. Grant, and is unimpeached in the record. No renewal of this lease or new lease was ever made, so far as the record discloses, nor does it appear that W. T. Scott or any of the appellants

ever paid rent after the expiration of the lease above referred to. W. T. Scott, however, retained possession, and on March 27, 1899, received a deed executed by M. Carter purporting to convey the absolute title to the land, which deed Scott caused to be registered in due form in Sterling County in May, 1899. There is a conflict in the evidence as to whether any part of the land is situated in Sterling County, but none as to the fact that after the record of the Carter deed W. T. Scott retained possession and regularly paid all taxes due in Sterling County, where the land was assessed, until the time of his death, which was in April, 1901, since which time appellants have held possession and paid all taxes due. The evidence also tends strongly to show that after the execution of the deed by M. Carter, in 1899, W. T. Scott in his lifetime, and appellants since then, have openly claimed and used the land as their own and have held adverse possession thereof, unless estopped from so claiming by reason of the execution of the lease by W. T. Scott in 1888, as before stated. In this connection, however, it should be stated that the record fails to show that L. P. Grant or appellee was ever actually notified by W. T. Scott of a repudiation of said tenancy.

"Among other errors assigned was one to the action of the court in overruling appellants' motion for continuance presented on the day of the trial. This motion was a first application and seems to embody all statutory requirements save that it was not alleged that due diligence had been exercised. Surprise, however, was suggested and reasons given why diligence to procure the desired testimony had not been used, all of which, together with other statements hereinafter made relating to said motion, will more fully appear by reference to said motion, which is hereby made a part of this certificate. The testimony desired was that of Mrs. Hyman, who was alleged to be in the Dominion of Canada by the advice of her physician; W. W. Marshall, residing at Dulzura, California; and C. A. O'Keefe, of Tarrant County; who were all alleged to be material witnesses for the appellants. The evidence sought of Mrs. Hyman and C. A. O'Keefe was expected to controvert or to show repudiation of the tenancy charged by appellee, and the testimony of Marshall tends to show that the land in controversy, or part thereof, was located in Sterling County, where W. T. Scott's deed from M. Carter was recorded.

"Error is also assigned to the action of the court in permitting the witness Carter to testify as follows, over the appellants' objection that the communications were privileged: 'That he was the attorney for W. T. Scott, for a number of years prior to his death, and attended to his business in connection with his land matters, that he was well acquainted with the land in controversy, and had had frequent talks with Scott about said survey; that Scott had built a fine house with other improvements on the land costing about $3,000. He was anxious to buy said land and witness wrote a number of letters for him and at his instance prior to the year 1899, in an effort to secure the purchase or the lease of the land. Scott was very anxious about the valuable improvements that he had placed on said land and desired to protect the improvements and for that

purpose witness made him the deed, bearing date March 7, 1899, conveying the land, and witness forwarded the same to Sterling County for record, enclosing a dollar to pay the recording fee, which Scott afterward paid back to the witness. Although this deed recites the consideration of $1,000 nothing was ever paid to witness—not a single dollar. The purpose of the deed was to protect Scott's interest on the land in the event somebody else bought the land or leased it. Witness had no claim or right to the land and had no unrecorded deed to it. Up to that time Scott did not claim to own the land. Scott had the land leased and witness knew that he had it leased, from conversations with Scott, and from the fact that Scott was in possession of the land.' "

"On original hearing the majority of the court as then constituted concluded that all assignments of error, including those above mentioned, should be overruled, especially in view of the undisputed proof that shows that 'plaintiff was recognized by defendants and defendants' ancestor as the owner of the land by lease contract and acts of tenancy, and there has never been any repudiation of tenancy brought home to the knowledge of the landlord or any surrender of the land.' With this view, however, Chief Justice Conner dissented, as will fully appear from the opinion on original hearing, which will be forwarded together with this certificate, it being his contention that reversible error was committed by the court in overruling the said application for a continuance and in overruling appellants' objection to the said testimony of the witness Carter.

"Appellants in due time have filed a motion for rehearing which is yet pending before us, and the court as now constituted yet remains unable to agree upon the questions presented upon original hearing, the majority of the court as now constituted being of the opinion that the judgment should be reversed for the reasons indicated in said dissenting opinion.

"We therefore deem it advisable to certify to Your Honors for determination:

"First. Whether under the facts stated and otherwise undisputed in the record the court committed reversible error in overruling appellants' application for a continuance?

"Second. Whether the court's action in admitting the testimony of M. Carter was erroneous and prejudicial?"

There was no reversible error committed by the court in the rulings submitted by the two questions copied above.

The filing of the supplemental petition does not affect the question presented, because the proof could have been introduced without the pleading. The lease of 1896 signed by Scott and mentioned in the application for continuance does not appear to have been introduced in evidence upon the trial, therefore, Mrs. Hyman's testimony to explain it would not have been admissible. Neither the evidence offered nor that of the absent witness tended to prove that the repudiation by Scott of the relation of landlord and tenant was ever brought to the knowledge of the lessor, Grant, therefore, the proposed testimony would have been insufficient to constitute a defense.

The application did not show with reasonable certainty that either

Marshall or O'Keefe would testify to any fact material to any issue presented in the case, therefore it was proper to deny a continuance for such testimony.

The evidence of Carter discloses no fact that he learned while acting as attorney for W. T. Scott. To be privileged the fact must have been communicated by Scott to Carter, or must have been learned by Carter while the latter was engaged in the performance of professional services to Scott as his client. 23 Am. & Eng. Ency. Law, p. 62; 6 Ency. Pl. & Pr., 751.

The making of the deed by Carter to Scott in order that the latter might place it upon record and acquire title by limitation was certainly not the act of an attorney which would be privileged, for if done in his professional character it was "a wrongful act," aiding Scott to perpetrate a fraud upon the owner of the land by making a pretence of title through a recorded deed when in fact no claim whatever existed. 23 Am. & Eng. Ency. Law, 76; 6 Ency. Pl. & Pr., 754; Matthews v. Hoagland, 48 N. J. Eq., 455.

It is not made to appear by the application that Carter as an attorney undertook to procure a lease or to make a purchase of the land for Scott and that the letters were written in discharge of such professional duty, therefore it is not shown that the evidence comes within the definition of privileged communications.

"As the rule of privilege has a tendency to prevent the full disclosure of the truth, it should be limited to cases which are strictly within the principle of the policy that gave it birth." (23 Am. & Eng. Ency. Law, 2 ed., p. 71.) The purpose of the rule is to secure to the client free communication with his attorney upon all matters involved in litigation or in the transaction of business about which professional services are sought. The facts testified to by Carter do not come within the rule thus laid down by the authorities and therefore were not privileged.