## McCLURE v. FALL et al.

### No. 1031.

Court of Civil Appeals of Texas. Waco.

Oct. 1, 1931.

Rehearing Denied Nov. 5, 1931.

Weatherby & Rogers and Barney A. Garrett, all of Waco, for plaintiff in error.

Pat M. Neff, of Waco, and Black & Graves, of Austin, and Joseph W. Hale, of Waco, for defendants in error.

ALEXANDER, J.

This was an action brought by Dan McClure against Mary C. Fall, individually, and as independent executrix, and John Christie as independent executor of the estate of Willie A. Deyerle-Sanborn, deceased, to ingraft a parol trust on the will of W. W. Deyerle, deceased, and to recover from the defendants a certain farm consisting of about five hundred acres known as the "home place at Comanche Springs," formerly belonging to W. W. Deyerle, deceased. The plaintiff alleged, in substance, that the property formerly belonged to W. W. Deyerle, now deceased, and that in 1912 the said Deyerle made a written will in which he devised all of his property to his wife, Willie A. Deyerle; that at the time and prior to the making of said will, he had a verbal agreement with his wife, Willie A. Deyerle, to the effect that he would will all of his property, including the property in question, to her with the understanding and agreement on her part that, if she survived him, she was to have the use of the property in question during her lifetime, but that she would either deed or will said property to the plaintiff prior to, or at the time of, her death. The plaintiff further alleged that, after the execution of said will, the said W. W. Deyerle contemplated changing his will and of devising said home place to the plaintiff, and that he would have done so but for an agreement on the part of the said Willie A. Deyerle by which she agreed that, if he would not so change his will, she would either deed said property to the plaintiff, or will the same to him at her death. The plaintiff alleged that said Willie A. Deyerle breached her contract and died without ever having deeded said property to the plaintiff, and that she willed the same to the said Mary C. Fall. The plaintiff prayed for the title and possession of the land. The defendant entered a general demurrer and general denial and alleged, among other things, that in 1921 after the death of W. W. Deyerle, the plaintiff, Dan McClure, brought a suit against Mrs. Deyerle individually and as independent executrix of the estate of W. W. Deyerle, deceased, for certain unpaid wages claimed to be due him, and that said suit was afterwards compromised and settled by an agreement by which Mrs. Deyerle paid the plaintiff the sum of $6,500, and the plaintiff executed and delivered to Mrs. Deyerle a written contract by which he released Mrs. Deyerle, and said estate from all claims of every kind; that the plaintiff had received the consideration provided in said contract, and had accepted the benefits thereof, and that by reason thereof the matters involved in this suit

had been settled and there had been a complete accord and satisfaction, and that the same constituted a bar to this suit. The plaintiff, by supplemental petition, alleged that he did not sign said contract of settlement, and that, if the agreement which he did sign released the claim herein sued on, it was through mistake and fraud, and further that it was not intended that said agreement should become binding until signed by both parties, and that Mrs. Deyerle never in fact signed said agreement. Upon a trial of the case, the defendant introduced in evidence the written release signed by the plaintiff, in which it was provided that Mrs. Deyerle individually and as the independent executrix of her husband's estate, by the acceptance of the written agreement, released the plaintiff from all claims held against him, and the plaintiff, in consideration of $6,500 to him paid, released Mrs. Deyerle and said estate from any and all claims and demands of every kind and character that he held or claimed against Mrs. Deyerle and against said estate.

A trial was had before a jury, and the jury, in answer to special issues, found, among other things, that the said W. W. Deyerle did not on or before November 26, 1912 (the date of his will), agree with his wife that he would leave all of his property to her by will if she would agree to either deed the home place to Dan McClure during her lifetime or leave the same to him at her death by will. The jury also found that after the said W. W. Deyerle executed his will of date November 26, 1912, the said Willie A. Deyerle did not promise her husband that she would deed the home place to Dan McClure during her lifetime or leave it to him by will at her death. The jury further found that the plaintiff signed the release in question, and that same was delivered by him or his attorneys to Mrs. Deyerle, or her attorney; that there was a valid consideration for the release by plaintiff of his claim to the property in question; that there was no misrepresentation nor fraud practiced nor mistake made in the procurement of the release. The jury found, however, that it was intended by the parties that the release should be signed by both parties before it became effective. The release was never signed by Mrs. Deyerle. Based upon the verdict of the jury, the court entered judgment for the defendants. The plaintiff sued out this writ of error.

The plaintiff in error complains of the action of the court in refusing to allow several witnesses to testify that the testator had a strong aversion to Harry Fall and his wife, Mary C. Fall, and that on several occasions just before his death he stated that he did not wish Harry Fall or his wife to ever come into possession of his property, and that he had it fixed so that they would never get the property. Harry Fall was a brother-in-law of the testator. His wife, Mary C. Fall, and Mrs. Deyerle were sisters. After the testator's death, Mrs. Deyerle employed Harry Fall to manage the estate, and later willed the property to Mrs. Fall, and thus Mrs. Fall came into possession of the property. Plaintiff also complains of the action of the court in refusing to allow him to prove that, after the death of Mr. Deyerle, Mrs. Deyerle violated many of the expressed wishes of her deceased husband by discharging many of the old employees and by placing her brother-in-law, Harry Fall, in possession of her property, and also complains of the action of the court in refusing to allow the plaintiff to introduce testimony showing the treatment of Harry Fall toward Mrs. Deyerle after Fall began to manage the estate. We do not think that the testimony above referred to would furnish any evidence of the agreement sought to be established by the plaintiff in error. The evidence was entirely too remote. The court did not err in excluding the testimony.

The plaintiff, for the purpose of rendering it more probable that the testator made the agreement with his wife by which the property in question was to be left to the plaintiff, offered testimony showing that he had worked for the testator from 1906 until the testator's death in 1920, devoting all of his time to this service, and that the only consideration that he had received therefor amounted to about $500. His only other source of income was a small grain crop cultivated on the halves. The defendant, in rebuttal to this testimony, was permitted to prove, over the objection of plaintiff, that, during the time the plaintiff so worked for the testator, he accumulated considerable property, and that he had no other means of accumulating such property, except as above stated. Since the plaintiff went into the question of the amount of compensation received by him for his services, it was proper for the trial court to allow the defendant to prove that the plaintiff had accumulated a considerable estate during the time in question. This was a circumstance tending to show that the plaintiff had been fully paid for his services, and it would tend to reduce the probability that the testator would remember the plaintiff in the disposition of his estate. This was especially true, since the other party to the transaction, Mr. Deyerle, was dead.

The plaintiff complains of the action of the court in permitting the defendant to prove that after the death of the testator, the plaintiff filed a suit against Mrs. Deyerle and against said estate for his unpaid wages, and that the suit was afterwards settled by the payment of $6,500 to the plaintiff, and that on the settlement of the suit the plaintiff executed a release for all claims held by him

against both Mrs. Deyerle and the W. W. Deyerle estate. The defendant was further permitted to introduce testimony showing what the issues were between the parties in the wage suit, and the negotiations that lead to the settlement thereof. The plaintiff complains of the admission of this testimony, and claims that this was in effect a relitigation of the wage suit, and that such testimony was irrelevant and immaterial. The defendant pleaded the release executed by the plaintiff in settlement of the wage suit as a bar to this suit. The plaintiff sought to avoid the effect of the release by alleging that he had been induced to execute it as the result of fraud and without knowing that it released his claim to the land in question. We think the testimony was admissible for the purpose of showing that the plaintiff for a valuable consideration had intended to release the claim herein sued on, and further, that no fraud had been practiced on him in procuring the release.

■ The plaintiff complains of the action of the court in permitting the defendant to prove, by the attorney who represented the plaintiff in the wage suit, that plaintiff never at any time told him of any agreement between Mr. and Mrs. Deyerle by which plaintiff was to get the home place after the death of Mrs. and Mr. Deyerle. This testimony was objected to on the ground that it referred to a confidential communication between attorney and client. Prior to the introduction of this testimony, the plaintiff had taken the stand in his own behalf and had, on cross-examination and without objection, testified fully as to the conversation between himself and said attorney with reference to said suit, and as to what he had told said attorney about the same. On redirect examination, and in answer to questions by his own attorney, he testified with reference to the same transaction. The plaintiff himself having thus testified with reference to these statements, the defendant was entitled to prove by said attorney that no such statements were made. Shelton v. Northern Texas Traction Co., 32 Tex. Civ. App. 507, 75 S. W. 338; 28 R. C. L. 580; Kelly v. Cummens, 143 Iowa, 148, 121 N. W. 540, 20 Ann. Cas. 1285; Hunt v. Blackburn, 128 U. S. 464, 9 S. Ct. 125, 32 L. Ed. 488; 40 Cyc. 2363 and 2374.

■ The plaintiff also complains of the action of the court in permitting the attorneys who represented him in the wage suit to testify as to what was said by the plaintiff and others with reference to the release that was to be executed by the plaintiff in settlement of said suit. The plaintiff sought to avoid the effect of the release executed by him by alleging that Mrs. Deyerle and her attorneys had perpetrated a fraud on him in procuring his signature to the release, and that his own attorneys had prepared the release and in-

duced him to sign it at a time when he was in a hurry to catch a train and did not have time to read it; and that his attorneys had assured him that it did not release any other claim that he had against the Deyerle estate other than the wage suit. He testified fully in his own behalf to the conversations that he had with his attorneys as to the terms of the release. Moreover, said attorneys had acted as his agents in the settlement of the wage suit. He is now challenging their authority in the matter, and charges them with having overreached him in securing his signature to the release. He, by his pleadings and by his own testimony, had made their authority to represent him and their conduct in securing the release an issue in the case, and the defendant was entitled to introduce the testimony of such witnesses for the purpose of showing that the plaintiff executed the release and settled the matter in controversy with full knowledge of the facts. Koeber v. Somers, 108 Wis. 497, 84 N. W. 991. 52 L. R. A. 512.

■ Jim Hughes, a witness for the plaintiff, testified by deposition in plaintiff's behalf to the alleged agreement between Mr. and Mrs. Deyerle. The plaintiff complains of the action of the court in permitting two witnesses to testify that they had known Jim Hughes since his early days in the primary school; "that he did not progress well in school and could not grasp anything hardly and was a drag and a numbskull in some lines"; that in their opinion he was not capable of dictating an answer to one question more than two pages long in smooth running sentences without making a grammatical error; "that he could not dictate an answer of that kind." Hughes did not appear in person before the jury. His credibility and the weight of his testimony was a question of fact for the jury. His mental capacity was material to aid the jury in passing on the weight of his testimony. It was therefore proper for the court to permit the introduction of testimony upon the mental capacity of Hughes in order to enable the jury to properly weigh his testimony. 40 Cyc. 2573; Wren v. Howland (Tex. Civ. App.) 75 S. W. 894, at bottom page 900; Kellner v. Randle (Tex. Civ. App.) 165 S. W. 509, par. 4; Bouldin v. State, 87 Tex. Cr. R. 419, 222 S. W. 555, par. 4.

■ One of the attorneys for the defendant testified that he went to Oklahoma and interviewed Jim Hughes with reference to the case. In his closing argument to the jury, this attorney told the jury he did not think it was bad or improper for him to go to Oklahoma and interview the witness, and further said: "If you were in this case and saw just half about what I knew about Jim Hughes, you would not think it bad. * * * They come back and say, "Why didn't you take his deposition'? Not on your life. The law says,

Gentlemen, that when a lawyer puts a witness on the stand, or takes his deposition, he vouches for him, and I would not dare put Jim Hughes' testimony on to take a yellow dog away from anybody and you wouldn't either, nor any other jury that ever looked at him and heard him testify."

D. J. Nettles was likewise a witness for the plaintiff and testified by deposition to the agreement in question. The defendant placed witnesses on the stand and proved that this witness' general reputation for truth and veracity was bad. The attorney for the defendant in his closing argument, said: "And when we asked the responsibility of going to prove that he is not fit to be believed under oath in a courthouse and that he is one of this lowdown type of fellows, and had witnesses to prove it, they objected and the court promptly sustained the objection."

This argument on the part of counsel was improper, but we do not think it requires a reversal of the case. The Commission of Appeals has held that where the trial court overrules an objection to alleged improper argument, the appellate court must not reverse the case unless it clearly appears that the argument violates the rules and is calculated to prejudice the rights of the complaining party. Emberlin v. Wichita Falls R. & Ft. W. Ry. Co. (Tex. Com. App.) 284 S. W. 539; Brazelton v. St. Louis S. W. Ry. Co. (Tex. Com. App.) 296 S. W. 290.

Some of the argument complained of appears, by its own terms, to have been in reply to the argument of the opposing counsel, and was therefore proper. Moreover, the above-quoted argument of counsel is but a small part of certain long paragraphs of counsel's argument as objected to by the plaintiff and set out in the various bills of exceptions. The objection was to the whole of the argument as set out in each of the bills of exceptions. Some of the argument as objected to was clearly permissible. It has been held that where a part of the argument as set out in the bill is permissible and a part of it is objectionable, and the objection is made to the whole of the argument as set out in the bill, it is proper for the trial court to overrule the objection. Counsel should point out separately in the trial court the objectionable argument, in order that the trial court may instruct the jury not to consider the same. Ferguson v. Fain (Tex. Civ. App.) 164 S. W. 1040, par. 5; Decatur Cotton Seed Oil Co. v. Belew (Tex. Civ. App.) 178 S. W. 607, par. 8; Regester v. Lang (Tex. Civ. App.) 33 S.W.(2d) 230, par. 8. This rule probably would not prevail where the argument complained of, or any part thereof, was so inflammatory or prejudicial that the error could not be cured by an instruction from the trial court. The argument in this case does not come within this class.

There is another reason why we think that the case must be affirmed and that the alleged errors, if any, in the admission of the testimony objected to by plaintiff with reference to the mental capacity of Jim Hughes to give the deposition in question, and the alleged improper argument above referred to, do not justify a reversal of this case. The findings of the jury show that at the time the wage suit was settled, the plaintiff executed, and either he or his attorney, delivered to Mrs. Deyerle, or her attorney, a written release by which he released her and the estate of W. W. Deyerle, deceased, from any and every kind of claim and demand whatsoever held by him against Mrs. Deyerle and said estate. The plaintiff sought to avoid the effect of this release by alleging that he was caused to execute same as the result of fraud on the part of Mrs. Deyerle and her attorneys and misrepresentations on the part of his own attorneys, and that he signed same by mistake without knowing that it purported to release the claim in question. He admitted that he signed and acknowledged the release, but claimed that he did not know at that time that it released the claim herein sued on. He also admitted that his own attorneys prepared the release, and that he accepted from Mrs. Deyerle the $6,500 to be paid to him by her as provided in the release, and retained the same in his possession. There was no evidence of any fraud on the part of Mrs. Deyerle or her attorneys. The jury found that plaintiff signed the release, and that either he or his attorney delivered same to Mrs. Deyerle or her attorney, and that there was no fraud perpetrated on plaintiff, and that the provision in said contract for the release of said claim was supported by a consideration, and was not inserted in the release by mistake. These findings were supported by the overwhelming weight of the testimony. It is true that the jury found that the release was not to become effective until signed by both parties, and that the defendant was unable to establish that Mrs. Deyerle signed it. It appears, however, that the release was prepared in duplicate, and, after being signed and acknowledged by the plaintiff, one copy was delivered to Mrs. Deyerle, or her attorney, and the other copy retained by the plaintiff or his attorney. Mrs. Deyerle retained the copy delivered to her, but apparently never signed it. Since the plaintiff signed the release and accepted and retained the consideration therein provided, and Mrs. Deyerle accepted the contract by paying the plaintiff the consideration therein provided, the signature of Mrs. Deyerle was not necessary in order to make it a binding contract. It is well settled that where a contract between two parties is reduced to writing, and is signed by one of them and is accepted and acted on by the other, and the one signing the contract receives the considera-

tion therein provided, this is sufficient to impress upon it the character of a written agreement, and it becomes binding on the party signing the same, and the courts will treat it as such. Clegg v. Brannan, 111 Tex. 367, 234 S. W. 1076, par. 2; Campbell v. McFadin, 71 Tex. 28, at bottom page 31, 9 S. W. 138; Martin v. Roberts, 57 Tex. 564; Johnson v. Tunstall (Tex. Com. App.) 25 S. W.(2d) 828, par. 3; Benson v. Ashford (Tex. Civ. App.) 189 S. W. 1093; Berryman v. Flake (Tex. Civ. App.) 20 S.W.(2d) 803, par. 1; Orbeck v. Alfei (Tex. Civ. App.) 276 S. W. 947, par. 1.

 Since the evidence shows without dispute that the plaintiff was bound by the release executed by him, and that he thereby released the claim herein sued on, and since the testimony of Jim Hughes related solely to the original agreement between Mr. and Mrs. Deyerle and not to the release in question, the error of the court, if any, in admitting such testimony with reference to the credibility of Jim Hughes, becomes immaterial. 3 Tex. Jur. p. 1013, § 720; National Compress Co. v. Hamlin, 114 Tex. 375, 269 S. W. 1024, par. 3; Douglass v. Mundine, 57 Tex. 344; Marlin v. Kosmoroski, 25 Tex. Civ. App. 355, 60 S. W. 788, at bottom page 789; Turner v. Parker (Tex. Civ. App.) 4 S.W.(2d) 639, par. 6; Conn v. Texas & N. O. Ry. Co. (Tex. Civ. App.) 4 S.W.(2d) 193, par. 4; Ft. Worth & D. C. Ry. Co. v. Gatewood (Tex. Civ. App.) 185 S. W. 932, par. 6. The same thing is true with reference to the improper argument. The argument complained of related solely to the credibility of the witnesses who had testified to the original contract between Mr. and Mrs. Deyerle to the effect that Dan McClure was to have the property after the death of Mrs. Deyerle, and tending to show that the plaintiff once had a cause of action. Neither the argument of counsel nor the testimony of the witnesses whose credibility was therein attacked, in anywise referred to the execution of the contract by which the plaintiff released his claim. The error, if any, was therefore harmless. Mullen v. G. H. & S. A. Ry. Co. (Tex. Civ. App.) 92 S. W. 1000; Vincent v. Bell (Tex. Civ. App.) 22 S. W.(2d) 753, par. 6; Smith v. Irwin (Tex. Civ. App.) 7 S.W.(2d) 926, par. 3; Employers' Liability Assurance Corp. v. Young (Tex. Civ. App.) 34 S.W.(2d) 622, par 6; Higginbotham Cattle Co. v. Whaley & Lewis (Tex. Civ. App.) 26 S.W.(2d) 308, par. 6; A. Harris & Co. v. Caldwell (Tex. Civ. App.) 276 S. W. 298, par. 3; O'Brien v. Jones (Tex. Civ. App.) 274 S. W. 242, par. 1.

We have considered all other assignments of error, and find them without merit.

The judgment of the trial court is therefore affirmed.