**HURLEY v. McMILLAN.**

No. 12658.

Court of Civil Appeals of Texas.

Galveston.

March 18, 1954.

Rehearing Denied May 20, 1954.

230

---

Ingram & Moore, Wharton, Robertson, Jackson, Payne, Lancaster & Walker, Otis Gary and D. L. Case, Dallas, for appellant.

J. J. Duckett, El Campo, John L. Hill, Jr., and W. James Kronzer, Houston (Duckett & Duckett, El Campo, Hill, Brown, Kronzer & Abraham, Houston, of counsel), for appellee.

CODY, Justice.

This was an action between appellee, U. S. McMillan, and appellant, Charles W. Hurley, to recover damages for personal injuries, as well as for damage to appellee's automobile, alleged to have been caused by the negligence of appellant, Charles W. Hurley, when the automobiles of the parties collided after dark on December 13, 1951, near El Campo, Texas. Appellant has represented, and appellee has not denied, that the collision occurred on the shoulder of the highway on appellant's side of the highway. Appellee based his cause of action upon the alleged failure of appellant to dim his headlights, and upon discoved peril. This case was here on the question of plea of privilege, and a rather full statement of facts was made on that appeal. See Hurley v.

McMillan, Tex.Civ.App., 255 S.W.2d 308. This present trial, however, was to a jury, and the court submitted the case upon 37 special issues.

In answers to the first nineteen special issues the jury convicted appellant of negligence in violating the statutes requiring the dimming of headlights, and also found against appellant on the issues as to discovered peril. The jury further found against appellant on his defensive issues 20–33, inclusive. The remaining issues related to the damages to appellee's automobile, and to appellee's medical and hospital expenses, and to his personal injuries. The court, upon the verdict, rendered judgment for appellee against appellant in the sum of $24,000.

Appellant has predicated his appeal upon fifteen points, covering more than five pages of his brief. We do not deem it advisable to take up such points in the order presented by him.

Appellant's fourth and fifth points complain of the action of the court (1) in sustaining appellee's motion in limine to prevent appellant, his attorneys and witnesses from referring to a written statement against interest relating to the collision, and (2) in sustaining an objection to the receipt in evidence of the testimony of James S. Garrison, Jr., who took said written statement.

At the time of the collision, appellee was covered by a public liability insurance policy issued to him by the American Indemnity Insurance Company. That company employed the aforesaid Mr. Garrison, who belonged to an independent firm of claim investigators and adjusters, to get appellee's written statement on the accident. This he did two days after the accident, while appellee was still in the hospital. The policy was on the Texas form, and by its terms we must assume that appellee was bound to give all information in his possession to his insurer. According to the written statement which Mr. Garrison obtained from appellee, appellee was headed west on the highway, and the statement further reads,

so far as is here material, "As I approached a curve I noticed two vehicles traveling east on the same highway and I applied my brakes to slow down and all of a sudden the left front brake locked and my car spun around in the middle of the highway and then headed for the wrong side of the highway and the front section of my car struck the front section of the oncoming car and I think the point of the impact was about on the shoulder on the wrong side of the highway from the direction I was traveling." The statement made no claim that appellee was blinded by the headlights of appellant's automobile. As noted above, appellee based his action in part on the alleged negligent failure of appellant to dim his headlights, as required by law.

■ In this connection, it is proper to state that appellee's insurance carrier paid to appellant the full extent of damages which appellant claimed as resulting by reason of said collision, namely $1,325. Appellant might well be aware of the fact, which we think courts are authorized to take judicial knowledge of, that insurance companies do not acknowledge liability for claims or pay them without first making an investigation of the facts. Appellant must have concluded that, in all reasonable probability, appellee had made a statement to his insurance carrier which placed liability on appellee for the accident. How appellant's attorney came into possession of the knowledge of the fact that appellee had made a written statement to his insurance carrier two days after the accident, and of the further facts which enabled him to ask, upon the trial of the plea of privilege contest, the following questions of appellee, and receive from appellee the following answers, is not revealed in the record:

"Q. As a matter of fact, two days after the accident you gave a written statement about it? A. Yes, I gave a statement. I don't know just when it was.

"Q. And in that statement you said that your left front brake grabbed and that is what caused the accident? A. Well, I just don't know what was in that statement.

"Q. That is a fact, isn't it? A. No, sir. I wouldn't say so.

"Q. You wouldn't say so? A. No, sir; because I don't recall saying that and I don't think I would have, because I would— wouldn't know.

"Q. Do you now deny having said that? A. Yes, sir, I do. I don't think I said that at all. I don't recall about the statement too much. This man came down there and got the statement and wrote it down, and I just don't remember too much about what was in it."

We have given the questions and answers on the trial of the plea of privilege relating to the aforesaid written statement and its contents, because, on that occasion appellee did not claim that such written statement was a privileged communication flowing from the attorney-client relationship. Instead, appellee denied that he had made any statement about his left front brake causing the accident. We will return to this when we discuss whether appellee, by denying having made such statement, by failing to claim that the statement was privileged, thereby waived the right to claim that the statement was privileged.

Before the trial on the merits, even before the jury was chosen, appellee urged his motion in limine to have the court order appellant not to bring out in any way the fact of the existence of the aforesaid written statement, or that Mr. Garrison had taken such statement. Appellee based his motion on the ground that the statement was privileged, and flowed from the attorney-client relationship existing between him and his insurer. Appellee's position that such relationship flowed from an attorney-client relation is based on the fact that appellee was by contract bound to give his written statement as to how such accident happened, and that such statement was necessarily given so that same could be submitted to the insurance company's attorneys. The insurance company, of course, had the right to choose the attorneys who should defend against any suit brought on a claim insured against.

On the hand, there can be no question that if the written statement was not privileged, it was admissible, for it was inconsistent with the testimony given by appellee upon the trial. See Texas General Indem. Co. v. Scott, Tex.Sup., 253 S.W.2d 651. In addition to resisting appellee's aforesaid motion in limine, thereafter when appellee testified upon the trial contrary to the facts as stated in said written statement, the court had the jury to withdraw in response to appellant's request. And appellant sought to have the written statement, and the testimony of Mr. Garrison admitted, and when the court refused, took his bill of exceptions.

The author of a note beginning at page 660 of 22 A.L.R.2d states in part "According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him. * *."

Appellee's insurance carrier's attorney did not defend appellant's claim against appellee. But we are not able to say, as a matter of law, that the trial court was not authorized to find the written statement in question was in fact intended for the information or assistance of the insurance company's attorney. It is not contended that any Texas court has rendered a decision in line with what the author of the aforesaid note announces to be the weight of authority, as to the rule which gives under certain circumstances the character of an attorney-client communication to the statement made by the insured to his insurance carrier. The policy of the Supreme Court of Texas has been to restrict the application of the rule of privilege, because it tends to prevent the full disclosure of the truth. Hyman v. Grant, 102 Tex. 50, 112 S.W. 1042, 1044; Flack's Adm'r v. Neill, 26 Tex. 273.

The author of the aforementioned note also admits that the federal courts hold contrary to what he declares is the weight of authority. However, he accounts for that fact on the ground that the decisions of the federal courts have been made under Rule 26(b), Federal Rules of Civil Procedure, 28 U.S.C.A. Apparently, from the note as quoted by appellee in his brief, only courts of Ohio and New York and England have held in conformity with what the note terms the weight of authority. The requirements which are necessary in order to qualify a communication as privileged are set forth in Prichard v. U. S., 6 Cir., 181 F.2d 326. Without setting such requirements out, it is enough to state that the written statement here in question could not, under the federal court holdings, qualify an attorney-client communication.

■ It cannot be denied that it is hardly less than shocking that it should be in the power of an insurance company, after it has received a release of liability, to in some way pass the information to an interested party that it has a written statement from its insured, which, if true, would bar such insured from recovering on a claim based upon the same happening, such as a collision. We do not imply that this happened in this instance. But if such a statement as we are here concerned with is not held to be a privileged communication, an insurance company against every duty of fair dealing would have it in its power to give such information to a third party who could have no legal or moral right thereto. However, we find that it is not necessary for us to pass on this interesting question. This, because on the occasion of the trial of the plea of privilege, appellee did not claim his privilege, if any he had, that the written statement flowed from an attorney-client relation. He admitted that he had made a written statement, but he denied that it contained the admission that the accident resulted from his faulty left front brake. It is the right of a party to claim that a statement given by him is privileged, but he cannot deny that he made such a statement without opening the door so that his adversary can bring out the truth. See

McClure v. Fall, Tex.Civ.App. 42 S.W.2d 821; Roberts v. State, 107 Tex.Cr.R. 139, 295 S.W. 609; Rodriguez v. State, 130 Tex. Cr.R. 438, 94 S.W.2d 476.

The evidence given by appellant's counsel, in response to appellee's questions on the hearing of the motion in limine, was to the effect, as we construe it, that he had no knowledge of the written statement until several months after he represented appellant in the plea of privilege contest. The question to be determined by us in this connection is not how to reconcile the knowledge which appellant's attorney's questions indicated that he had when he tried the plea of privilege, with his testimony that he had no information that a written statement even existed, so late as several months after the trial of the privilege contest. The appellee knew what statement he was being asked about. He waived his right to claim the statement as privileged by not claiming his privilege when questioned. We must sustain appellant's fourth and fifth points.

■ Appellant's first and second points complain that appellee's counsel in their argument informed the jury as to the legal effect of their answers to the special issues. In view of a new trial we deem it not improper to state that counsel may group the special issues in any manner they deem logical and argue as to how they should, as a group, be answered. But to inform the jury in effect that, if they answer the issues as appellant's counsel argues, they might as well, so far as appellee is concerned, throw the verdict into the waste basket, is to inform the jury of the legal effect of their answers.

■ We think that appellant's third point should be sustained. The point complains that appellee's counsel, in discussing the 37th issue, which was the personal damages issue, informed the jury that appellant was protected by public liability insurance. Counsel did not literally inform the jury that appellant was protected by insurance. But he said he didn't think appellant cared how the jury answered the damages issue. "We ask for common consideration on the

point," said appellee's counsel, "so that when Mr. McMillan meets you or anyone else—and they say they didn't care what you answered to the damage issue, and I don't think Mr. Hurley does, either. They get up and talk about one man and the other man." It is not conceivable that, if a party to a suit is the real and true defendant, and will have to pay the judgment, he would not very much care what the jury answered to the damages issue. We believe that a clear intimation that an insurance company is in fact defending the suit is the legal equivalent of informing the jury of such fact. And, of course, if the jury is informed that the suit is in fact defended by an insurance company, the court must declare a mistrial. See Kuntz v. Spence, Tex.Com.App., 67 S.W.2d 254, 256; Continental Oil Co. v. Barnes (writ refused), Tex.Civ.App., 97 S.W.2d 494. We believe that the expression of the opinion that Mr. Hurley won't care how the damages issue is answered is a clear intimation that an insurance company will have to pay the judgment. Such an intimation cannot be withdrawn by the counsel following it up with the statement that the jury should answer the issue in accordance with the evidence.

 We overrule appellant's points six and seven, complaining that the court would not permit appellant to prove that appellee's insurance company settled the damages which appellant claimed resulted to him from the negligence of appellee in causing the collision. Appellant cites no authority holding that the payment by an insurance company of a claim arising under its policy, made without the knowledge or consent of the insured can be taken as any evidence against the insured that he negligently caused the collision. It was held in Foremost Dairies, Inc. v. Campbell Coal Co., 57 Ga.App. 500, 196 S.E. 279, 283, that "where, under an insurance policy which insures the insured against loss arising from claims for damages growing out of an accident covered by the policy, the company, when settling such claim, although the contract of settlement releases the insured from all liability, does not act as the agent of the insured." We have found no authorities which hold otherwise. It is manifest that an insurance company, if it admits that its insured is liable, without its insured's knowledge or consent, is acting in its own interest, and not as the agent of the insured. The insurer cannot bar its insured's right to recover $24,000 damages for injuries received in the collision, by settling the claim of the other party to the collision for $1,325.

We have carefully examined the remaining points urged by appellant; they relate to such matters as were decided upon the appeal of the plea of privilege, or to matters not likely to arise upon another trial, or to the claim that the pleadings and evidence were insufficient to justify the submission of issues. Appellee has fully answered such points in his brief, and we overrule each of them. No good purpose would be served by further extending the length of this opinion by discussing each point individually.

Having sustained appellant's points three, four and five, we must reverse the court's judgment, and remand the cause for a new trial.

Reversed and remanded.

## On Appellee's Motion for Rehearing.

There was nothing vague about Mr. Hill's statement, when he was arguing the damages issue to the jury, that he did not think Mr. Hurley cared how the jury answered that issue. A jury composed of intelligent men could only have understood, we believe, from that statement that Mr. Hurley was protected by liability insurance and so could not be personally affected however the personal damages issue was answered. To tell a jury of ordinary intelligence that the defendant in a damage suit did not care how the damages issue is answered is, we believe, the legal equivalent of stating that such defendant is protected by insurance.

We adhere to our conclusion expressed in our original opinion, that appellee's tes-

timony disclosed that he knew he was being questioned on the plea of privilege hearing about the written statement which he gave Mr. Garrison two days after the accident, and by failing to claim same was privileged lost any right to claim that it was privileged.

Appellee's motion for rehearing is refused.