**METROFLIGHT, INC., Plaintiff,**

v.

**ARGONAUT INSURANCE COMPANY and Southern Marine & Aviation Underwriters, Inc., Defendants.**

**Civ. A. No. CA–3–74–0654–D.**

United States District Court,
N. D. Texas,
Dallas Division.

Nov. 19, 1975.

William N. Hamilton, of Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, Tex., (Represents non-parties Shaffer and Floyd West Company, respondents on the motion to compel), for plaintiff.

Ronald L. Palmer, of Baker & Botts, Houston, Tex. (Represents Defendants, movants on the motion to compel), for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERT M. HILL, District Judge.

Defendants' motion for order compelling discovery came on for consideration before the Honorable Robert M. Hill, United States District Judge. In an order filed October 29, 1975, the court required the disputed documents to be produced for an in camera inspection. After considering the motion and the arguments of counsel and after inspecting the disputed documents, the court is of the opinion that some of the documents are privileged.

This dispute arose after a Metroflight airplane crashed on April 30, 1974. The defendants Argonaut Insurance Company and Southern Marine & Aviation Underwriters, Inc., carried the insurance for Metroflight. Plaintiff and defendants are disputing the applicability of certain exclusions in Metroflight's insurance coverage. Surry Shaffer, d/b/a Shaffer Insurance Agency, a non-party to this case, was the insurance agent who secured Metroflight's coverage with the defendant. Floyd West Company insures Shaffer with an errors and omissions policy which obligates Floyd West to defend Shaffer against any negligent act, error, or omission committed by him in the conduct of his business. After this action arose, William Hamilton, an attorney, was hired to assist in the investigation of this case and to counsel with Shaffer.

The question before the court is whether the attorney-client privilege protects communications between Shaffer and John Littrell, Floyd West's agent, and Hamilton from discovery by the defendants. In its prior order this court held that the new Federal Rules of Evidence, particularly Rule 501, were applicable and required application of Texas law in determining whether these communications were privileged.

Unfortunately, applying Texas law in this case is made difficult because the Texas courts have not addressed the issue of an insured-insurer privilege in a decisive manner, and furthermore, the fact situation in the present case departs from the norm.

*Hurley v. McMillan,* 268 S.W.2d 229 (Tex.Civ.App.—Galveston—1954) writ

ref'd n. r. e., reviewed the law in the question presented but made no specific finding on the issue. Instead, the court found that the witness waived any privilege by denying facts in an allegedly privileged statement rather than asserting the privilege. Also see *Dobbins v. Gardner*, 377 S.W.2d 665 (Tex.Civ.App. —Houston—1964) writ ref'd n. r. e. *Lantex Construction Co. v. Lejsal*, 315 S.W.2d 177 (Tex.Civ.App.—Waco—1958) writ ref'd n. r. e., is equally unhelpful since the court's determination to exclude the statement was principally grounded in the statement's apparent lack of reliability. *Gass v. Baggerly*, 332 S.W.2d 426 (Tex.Civ.App.—Dallas —1960) no writ, which appears to recognize a privilege in the usual insured-insurer situation, relied upon Rule 167 of the Texas Rules of Civil Procedure.[1] By its own terms Rule 167 does not apply to the circumstances of this case since neither Floyd West nor Shaffer is a party to this case and Metroflight, to the court's knowledge, has not claimed a privilege. It should be noted that Rule 167 is supportive of the respondents' claim that Texas recognizes a privilege in the insured-insurer situation.[2]

After due consideration of the relevant cases the court is of the opinion that Texas law provides a limited privilege for communications between an insured and his insurer. The privilege is an outgrowth of the privilege protecting communications between a lawyer and his client.

Liability insurance policies, like the one at hand, commonly obligate the insurer to defend actions against the insured within the policy coverage. Pursuant to that obligation the insurer ordinarily investigates the facts underlying any possible claim against the insured. The investigation file often includes statements from the insured concerning the facts of the claim. This court is of the opinion that Texas law recognizes a privilege for such communications when the court finds that communications were intended for the assistance of an attorney in the defense of a possible claim against the insured. A finding of such intent is a necessary limitation upon the privilege since the Texas courts have recognized that privileges are to be construed narrowly. *Hyman v. Grant*, 102 Tex. 50, 112 S.W. 1042 (1908).

The Texas courts' rationale for the limited privilege has not been fully articulated. It is plain to this court that a communication between the insured and the insurer's attorney preparing the defense of an actual or expected claim would be privileged. To extend the privilege to communications between insurer and insured, when the insurer is obligated to defend the insured and the communications are in furtherance of this obligation, is no great leap. Such a privilege has the economically beneficial effect of allowing the insurer to investigate the case and possibly settle the matter without extensive involvement of an attorney. Without some such protection the court anticipates that the practice would develop of hiring attorneys at the earliest stage of the claims investigation process, an economically wasteful practice which would allow evasion of the spirit of free discovery with little alteration in the substantive relationship between the

---

1. Rule 167, in pertinent part, provides " . . . the rights [of discovery] herein granted shall not extend to the written communications passing between agents or representatives or the employees of either party to the suit, or communications between any party and his agents, representatives, or their employees, where made subsequent to the occurrence or transaction upon which the suit is based, and made in connection with the prosecution, investigation or defense of such claim or the circumstances out of which same has arisen, . . . "

2. The parties have argued the question of whether Rule 167 is procedural or substantive in nature or effect. The court's determination that the Rule does not apply obviates the need for settling that dispute. The court's decision is based upon the common law attorney-client privilege, not Rule 167.

parties. Moreover, the policies underlying the attorney client privilege of encouraging the client to freely state his case to his attorney, thereby facilitating the ends of justice, are applicable in the instant case to communications from insured to insurer about a possible claim the insured is obligated to defend. Finally, the court is of the opinion that an insured in these circumstances has a reasonable expectation of confidentiality.

At the same time the court is fully cognizant that pursuit of the truth is fundamental to the discovery process. Privileges damper that pursuit and must therefore be narrowly interpreted, hence the importance of the limitation that the court find that the statement was made with "an eye toward litigation" and for the aid of the client's legal defense.

Turning to the facts of this case, the court is of the opinion that the following documents were demonstrably prepared with litigation in mind and as an aid to the ultimate legal defense of a possible claim under Shaffer's errors and omissions policy issued by Floyd West and Company:

*Communications by Shaffer*

1. Letter dated May 3, 1974, from Shaffer to Littrell.
2. Memorandum dated May 7, 1974, from Shaffer to Littrell.
3. Letter dated May 11, 1974, from Shaffer to Littrel and Hamilton with attached memorandum of May 10, 1974, of Shaffer.
4. Letter dated June 16, 1974, from Shaffer to Littrell and Hamilton.
5. Letter dated June 16, 1974, from Shaffer to Littrell and Hamilton.
6. Letter dated June 18, 1974, from Shaffer to Littrell and Hamilton.
7. Letter dated June 18, 1974, from Shaffer to Hamilton.
8. Letter dated June 19, 1974, from Shaffer to Hamilton.

*Communications by Littrell*

1. Letter dated May 3, 1974, and attachments from Shaffer to Littrell.
2. Letter dated May 3, 1974, from Littrell to Shaffer.
3. Memorandum dated May 7, 1974, from Shaffer to Littrell (this has been misplaced and cannot be located in Littrell's file at this time, but it is the same memorandum forwarding a copy of Metroflight Airlines, Inc., Policy No. H–4–210 which is herewith furnished as Item 3 above from Shaffer's file.)
4. Inter-company letter dated May 9, 1974, from Littrell to Eger (Floyd West).
5. Letter dated May 11, 1974, with enclosures, from Shaffer to Littrell and Hamilton.
6. Letter dated May 14, 1974, with attachments from Littrell to Hamilton.
7. Letter dated June 16, 1974, from Shaffer to Littrell and Hamilton.
8. Letter dated June 16, 1974, from Shaffer to Littrell and Hamilton.
9. Letter dated June 18, 1974, from Shaffer to Littrell and Hamilton.

It is therefore ordered that the above described documents not be produced and they shall be sealed and filed with the Clerk of the court, not to be divulged without further order of the court. The remaining documents submitted to this court in camera shall be produced.