### ADD LEE ROBERTS V. THE STATE.

No. 10509.   Delivered February 2, 1927.

Rehearing denied State, June 8, 1927.

**1.—Manslaughter—Evidence—Undisclosed Motives of Deceased—Improperly Admitted.**

Where, on a trial for manslaughter, it was error to permit an eye-witness to the homicide to testify for the state what the deceased's motives were in going to the house of the appellant, where the killing occurred, just prior to the homicide.   In the absence of a showing that appellant was apprised of said motives of the deceased, such testimony should not have been admitted.   Following Bradley v. State, 60 Tex. Crim. Rep. 398, and other cases cited.

**2.—Same—Dying Declarations—Predicate for Introduction—Sufficient.**

Where two witnesses testified to the dying declarations of the deceased, and, as a predicate, testified that the deceased was conscious of approaching death, was of sound mind, and that the declarations were made voluntarily, and not under persuasion, or in response to any leading questions, the predicate was sufficient.

**3.—Same — Evidence — Written Instrument — Tendered to Appellant—No Error Shown.**

Where the state was examining as a witness the daughter of appellant in reference to a written statement made by her to the County Attorney, the appellant requested that he be permitted to inspect the writing, which was refused, but thereafter the court tendered said written statement to appellant's counsel, and told them they might call the witness back, for further examination, which offer was declined, no error is shown.

**4.—Same—Acts and Conduct of Deceased—Properly Excluded.**

There was no error in refusing to permit the appellant to prove a difficulty which occurred between the deceased and the city marshal, it not being shown that appellant was cognizant of any of the facts sought to be proven, and where no facts were set out in the bill which would authorize the admission of such testimony.   See Patterson v. State, 56 S. W. 59; Willis v. State, 49 Tex. Crim. Rep. 142.

**5.—Same—Impeaching Witness—Held Proper.**

Where the daughter of appellant had testified in his behalf, there was no error in permitting the state to introduce a written statement, made by her to the County Attorney shortly after the homicide, for the purpose of impeaching such witness.

**6.—Same—Evidence—Properly Admitted.**

Where appellant had testified to a contrary state of facts, the state was authorized to rebut appellant's testimony by the private prosecutor, Mr. Lockhart, contradictory of statements made by appellant.

ON REHEARING BY STATE.

**7.—Same—Bill of Exception—Misconstrued—No Error Shown.**

On rehearing by the state, it appears that our construction placed upon appellant's bill of exception No. 1 in our original opinion was in error. The objection made to the testimony admitted was not that it disclosed the motives of the deceased, which were unknown to appellant, but as it appears from appellant's bill, that the testimony was a conclusion of the witness. As against this objection, the testimony of the witness McNurman was properly admitted.    See Tait v. State, No. 10058, not yet reported.

**8.—Same—Misconduct of Prosecuting Attorney—Reversible Error.**

Where appellant, on a trial for murder, was defending on the ground of self-defense, and had testified that appellant at the time of the homicide had a pistol, whereupon he was asked by his counsel, who he had first told that appellant had a pistol, and replied, "Mr. Lockhart." Whereupon Mr. Lockhart, who was private prosecutor, denounced the appellant in open court as a "damn liar," this unfortunate incident would demand the reversal of the case, notwithstanding that Mr. Lockhart afterward, in open court, apologized for his remarks. See Harwell v. State, 61 Tex. Crim. Rep. 233, and other cases cited on rehearing.

Appeal from the District Court of Lynn County.    Tried below before the Hon. Gordon B. McGuire, Judge.

Appeal from a conviction for manslaughter, penalty five years in the penitentiary.

The opinion states the case.

*Vickers & Campbell* of Lubbock, *B. P. Maddox* of Tahoka, *T. L. Price* of Post, for appellant.   On misconduct of State's Attorney, appellant cites:   Stroehmer v. State, 272 S. W. 163; Fifer v. State, 272 S. W. 164; McGill v. State, 160 S. W. 353; Cooper v. State, 163 S. W. 424; Cooper v. State, 147 S. W. 275, and Newton v. State, 275 S. W. 1055.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

BAKER, Judge.—The appellant was convicted of manslaughter, and his punishment assessed at five years in the penitentiary.

The record discloses that the appellant was indicted for murder, being charged with shooting and killing Calvin Petty with a shotgun on or about March 28, 1925. It appears from the record that prior to the homicide the appellant had made complaints against Oscar Petty, brother of deceased, and Frank Eubanks, charging them with adultery. It was the contention of the state that the deceased and Earl McNurman had gone to the residence of the appellant on a friendly mission and for the purpose of seeing appellant and requesting him to withdraw said complaints; and that while at the residence of the appellant, and while deceased and McNurman were unarmed, the appellant, without provocation, killed the deceased by shooting him twice with a shotgun. The appellant defended upon the ground that the deceased had accosted him on the morning of the homicide in the town of O'Donnell and demanded that he withdraw said complaints, threatening him with death before sundown in the event he failed to do so; that in the afternoon deceased and McNurman appeared at his residence in an automobile; that after deceased had cursed the appellant and accused his wife of being unchaste, deceased and McNurman grabbed him, appellant, and were attempting to throw him in their car when the appellant's wife appeared upon the scene with a gun, whereupon the appellant then broke loose from the parties, ran into the house, and secured his gun; that he observed the deceased getting out of his automobile with a drawn pistol and heard him tell McNurman, "Throw the son-of-a-bitch in the car," and state that he, deceased, would kill the appellant if the complaints were not withdrawn, at which time appellant shot and killed deceased.

The record discloses nine bills of exception. Bill No. 1-a complains of the manner of summoning the venire. The disposition we have made of the appeal precludes the necessity of discussing this bill, as this question is not likely to arise again upon another trial.

Bill of exception No. 1 complains of the action of the court in permitting the state's witness McNurman, on direct examination by the state, to testify over appellant's objection that he knew the reason why the deceased went to appellant's house just prior to the homicide, and that the deceased's purpose was to try to get appellant to withdraw the complaints that had been filed against Eubanks and deceased's brother, Oscar Petty. The objection urged to this testimony was that it was admitting the undisclosed motives of the deceased, which were unknown to the

appellant and which were hearsay. We think the learned trial judge fell into error in the admission of this testmony in the absence of a showing that appellant was apprised of said motives of the deceased, and especially where the testimony impinged on the defense, as in this case. Bradley v. State, 60 Tex. Crim. Rep. 398; Dennis v. State, 101 Tex. Crim. Rep. 454, 276 S. W. 715; also see Branch's Ann. P. C., Sec. 1930, citing Brumley v. State, 21 Tex. Crim. App. 238, and many other authorities.

Bill No. 2 complains of the action of the court in permitting the witnesses Dr. Campbell and Bert Bailey to testify to the dying declarations of the deceased, on the ground that there was not a sufficient predicate laid to show that the deceased was sane at the time of making such declarations. We are unable to agree with this contention. The testimony of said witnesses shows that the deceased was conscious of approaching death, and the doctor testified, "I judge he was of sound mind." The witness Bailey testified to hearing the deceased make a statement and that same was voluntary and not under persuasion or in response to any leading questions, and then testified, "He seemed to be of sound mind." We are of the opinion that this evidence was a sufficient predicate for the admission of the dying declarations of the deceased, especially in the absence of any controverting evidence thereto.

In bills 3, 4 and 5 complaint is made to the action of the private prosecuting attorney G. E. Lockhart with reference to his manner and conduct in interrogating the appellant while on the stand, but in view of the court's ruling and the disposition that we have made of this case, it becomes unnecessary to discuss these bills, as the issues contained therein are not likely to arise again upon another trial.

Bill No. 6 complains of the refusal of the court to require the private prosecuting attorneys to deliver to appellant's counsel a written statement taken by the County Attorney from the appellant's daughter, Miss Claudie Roberts, while she was being questioned by the state relative to said written statement. The qualification of this bill by the court shows that although he refused to require the state to permit appellant's counsel to see said written statement while said witness was upon the stand, he did thereafter tender said statement to appellant's counsel and advised them that they could call the witness back to the stand for further examination if they desired to do so, which offer was declined by them. In view of this qualification, we are of the opinion that the bill fails to show such error as would require a reversal of the case.

Bill No. 7 complains of the refusal of the court to permit the appellant, on cross-examination of the state's witness Wimbley, a city marshal, to prove that the deceased started a difficulty in which said officer and deceased were engaged, and that said difficulty arose out of a complaint made by one Bolden against the deceased for disturbing the peace, upon which a warrant of arrest had been issued, and that the officer was attempting to execute same at said time; and, further, that deceased attempted to make Boldin withdraw said complaint. Appellant's contention is that this testimony was admissible for the purpose of showing the dangerous character of deceased, and for the purpose of showing that he, deceased, began the difficulty with appellant in the instant case. This bill fails to show that the appellant was cognizant of any of the facts sought from said witness, nor are there any facts set out in said bill authorizing the admission of such testimony. Branch's Ann. P. C., Sec. 2094, citing Patterson v. State, 56 S. W. 59; Willis v. State, 49 Tex. Crim. Rep. 142, and many other authorities.

Bill No. 8 complains of the action of the court in permitting the state to introduce in evidence, over the appellant's objection, a written statement made and sworn to by the appellant's daughter shortly after the homicide to the County Attorney, which statement was, in effect, contradictory to her testimony upon the stand in behalf of her father. The County Attorney testified that the statements in this affidavit were made by the witness to him. We are of the opinion that this testimony was admissible for the purpose of impeaching said witness, and that there was no error in the refusal of the court to exclude same from the jury.

Bill No. 9 complains of the action of the court in permitting the state to show by G. E. Lockhart, one of the private prosecuting attorneys, that the appellant made no statement to him relative to the homicide at the time appellant called him to the jail for the purpose of talking to him. It is contended that this testimony was inadmissible because it was a privileged communication between attorney and client, and if offered for impeachment purposes it was on a collateral issue. We are of the opinion that this bill, as presented, shows no error. The appellant had testified to a contrary state of facts, which authorized the state to rebut appellant's testimony by the introduction of the evidence complained of in this bill.

For the error above mentioned, we are of the opinion that

the judgment of the trial court should be reversed and remanded, and it is accordingly so ordered.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—The state insists that our judgment of reversal was wrong, and we have again carefully reviewed the record. Bill of exceptions No. 1, when considered together with the qualification placed thereon by the court without objection, shows that the state witness McNurman was asked by the prosecuting attorney if he knew why deceased went to the house of appellant on the occasion of the homicide, and that he answered without objection, that he did. He was further asked by the prosecution to state why. This was objected to solely on the ground that it would be a conclusion of the witness, and that any conversation between witness and deceased, not in the presence of appellant, would not be admissible. This objection was overruled, and the witness answered that the reason deceased went to said house was to try to get appellant to withdraw a complaint filed by him against Frank Eubanks and a brother of deceased. We are unable to find anything in the answer given which contained any conversation theretofore had between the witness and deceased, and that part of the objection directed thereat was groundless. The objection to this testimony that it was a conclusion, avails nothing. The conclusion, unless resting upon such matters as hearsay, may be primary evidence and entirely competent. It may be the expression of what is known to the witness, and in fact this witness testified that he did know said reason. For aught we learn from the bill or otherwise, the witness may have himself suggested to deceased that he go and see appellant and get him to dismiss the complaint, or he may have known such fact from matters arising prior thereto, which did not involve any conversation with deceased. We find an argument in the able brief of appellant to the effect that he was objecting to this testimony because it contained the undisclosed motive of the deceased,—but when we examine the bill of exceptions to see what was ruled out by the court below, we note that there was no suggestion that the question called for any undisclosed motive. On appeal we pass on the correctness of the rulings of the trial courts in the light that the matter was presented to them, and we cannot

here supply reasons why testimony should not have been admitted, which were not advanced or called to the attention of the lower court when the ruling was made. Upon more mature consideration we have concluded that we erred in reversing this case for the admission of this testimony. Tait .v. State (No. 10058, opinion on rehearing May 11, 1927).

The objection to the venire, which appears in one of the bills of exception, is not briefed, and we find nothing therein subject to the complaint.

The record discloses that the killing came up over some complaints appellant had filed against one Eubanks and a brother of deceased. McNurman and deceased had gone to appellant's home, where, according to appellant; inquiry regarding the complaints was further pursued by deceased. On his direct examination appellant related the circumstances immediately incident to the killing as follows:

"I told him (deceased) that I was the man that filed the complaints, and when I told him I was the man that filed the complaints, he asked me why I filed the complaints, and I told him because they went and stayed all night with my wife's sister, and slandered my home, and he says: 'Slander your home, hell, your wife's nothing but a whore, and you're a pimping son of a bitch for her,' and when he told me that, Calvin grabbed hold of me, grabbed by the arm, and McNurman grabbed me, and then Petty got his gun, which was laying on the seat between him and McNurman, got his gun in his right hand, and we scuffled backward and forward with the gun, and then my wife came out with her shotgun and threw it on them, and McNurman turned his hold aloose. If my wife said anything, I didn't understand what she said, and when McNurman turned his hold aloose, I backed off something like three steps with my hands up, and Petty says, 'Get out and throw the son of a bitch in here, he is going to withdraw those complaints, or I'll kill him.' At that time Calvin had the gun throwed down on me. McNurman pushed open the door and got out and started toward me, and I ran in the house just as quick as I could and got my shotgun, and fired two shots at Petty's body."

We are not concerned as to whether the foregoing recitals by appellant are true or not. The testimony did raise an issue which it was the province of the jury to determine and in doing so they should be controlled solely by the evidence. If misconduct of private prosecutor occurred during the trial which probably influenced the jury to the hurt of appellant our duty demands that we take note of it. The unfortunate incident to

which we refer was introduced into the case by Mr. Lockhart, who had been employed to prosecute, asking appellant on cross-examination who the first man was he had told that deceased called his wife a "whore," to which appellant replied that it was to the attorney asking the question. Counsel replied to this by saying "You didn't tell me anything of the kind." This brought an objection from appellant's counsel and the court admonished Mr. Lockhart not to argue with the witness. This much is shown by bill of exception Number Three. Bill Number Four shows that upon further cross-examination counsel asked appellant this question, "Who told you to say that Calvin Petty (deceased) said your wife was a 'whore' "? Before objection could be interposed appellant answered, "He called my wife a whore." Appellant's counsel reserved an exception on the ground that this tended to reflect upon appellant and his counsel. The entire cross-examination of appellant as revealed by the statement of facts shows that Mr. Lockhart was seriously questioning the truth of appellant's statement that deceased had applied such an epithet to appellant's wife and also that deceased had a pistol at the time of the killing. When appellant was taken on re-direct examination it is shown by bill of exception No. 5 that his own counsel asked him regarding his efforts to employ Mr. Lockhart and then asked if he did not say that he had first told Mr. Lockhart about deceased having a pistol. When appellant answered in the affirmative Mr. Lockhart immediately in the presence of the jury denounced appellant as a "damn liar." The court severely reprimanded counsel and imposed a fine of $50 upon him. After this incident the court recessed until the following morning, at which time Mr. Lockhart apologized to the court and jury and asked the court to instruct the jury not to consider his remark of the day before. Later in the trial Mr. Lockhart was sworn as a witness and testified that he had no conversation with appellant relative to the facts of the case. He said appellant sent for him and that he went to see him, but told appellant that he did not want to hear the facts or go into the case. If this regrettable incident had closed with the transaction complained of in bill Number Three it might have been held harmless on the ground that counsel's denial of the truth of the particular statement therein complained of related to a subject which was cognizable by the jury only on the issue of manslaughter, and the verdict being for that offense only it could not be said there was probability of injury. But appellant was defending on the ground that deceased had threatened to kill him if the complaints were not withdrawn, that he was

armed with a pistol and had assaulted appellant with it. Whether deceased was armed with a pistol was a vital issue in the case. The conversation between appellant and Mr. Lockhart having come into the case as heretofore related, appellant was claiming on the trial that he had told counsel that deceased did have a pistol. Whether he did or did not so tell the attorney would not establish as a fact that deceased had a pistol, but the question for us to determine is what was the probable effect as to this issue upon the jury's mind when counsel denounced appellant as a "damn liar."· It certainly did not tend to support appellant's claim. The abuse of witnesses and defendants has frequently been the subject of discussion by this court. It usually occurs in argument of counsel. Many cases involving the point are collected by Mr. Branch in Section 366, of Branch's Ann. Tex. P. C. Some of the more recent cases are Harwell v. State, 61 Tex. Crim. Rep. 233; Stroehmer v. State, 100 Tex. Crim. Rep. 90, 272 S. W. 163; Newton v. State, 101 Tex. Crim. Rep. 497, 275 S. W. 1035, and Nichols v. State, Tex. Crim. Rep. —, 290 S. W. 1093. In Stroehmer's case the sheriff, while testifying as a witness, so far forgot himself as to use language reflecting upon accused. In Nichols' case the district attorney went beyond legitimate discussion and in argument denounced appellant's attorney as a "black liar." In Newton's case the district attorney in his argument denounced the defendant as a "big slacker." In all of these cases the unwarranted conduct referred to was made the basis for reversal, notwithstanding in most if not all of them the court instructed the jury to disregard the incident. So far as probable injury is concerned we can see little distinction whether the matter complained of occurred in argument or in the examination of witnesses. We doubt that counsel's subsequent apology for his conduct and the court's instruction for the jury to disregard it could obviate the harm. Counsel had denounced appellant as a "damn liar"; he apologized for it, but later took the stand as a witness and the effect of his testimony was that his denunciation was true. ·Suppose he had testified denying the truth of appellant's assertion (which he unquestionably had a right to do) and then in argument had denounced appellant's statement to the contrary as a "damn lie." Under all the authorities this court would have found great difficulty in sustaining the conviction. We see no practical difference where the denunciation occurred in the course of appellant's examination as a witness. Doubtless eminent counsel was indignant at appellant's statement, and justly so if, as contended, the statement was false, but the truth of the matter brought into

controversy was upon a vital issue in the case, and the conduct of prosecuting officers, whether occupying that position by virtue of election or by employment, should be such that no improper influence be brought to bear upon the jury in settling issues necessary to a proper determination of the case.   We regret that such an incident came into the record, as doubtless does eminent counsel also, and no one quicker than he at a time when his mind is unruffled will recognize the unfairness to appellant.

Our original opinion is modified upon the point first herein considered, but we have reached the conclusion that because of the matter last discussed the judgment must nevertheless be reversed, and the state's motion for rehearing is therefore overruled.

*Overruled.*