## LORENE HILTON V. THE STATE.

No. 23250. Delivered December 19, 1945.

The opinion states the case.

*J. Ross Bell*, of Childress, for appellant.

*Ernest S. Goens*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is bigamy. The punishment is assessed at confinement in the state penitentiary for a term of two years.

The record reflects that on the 3rd day of June, A. D., 1939, appellant was legally married to S. C. Hilton, and to them two children were born; that in December of 1943, her husband joined the U. S. Navy. Thereafter, on the 27th day of March, 1945, while her husband was serving his country in the Armed Forces, she married one W. J. Lockard. Both of said marriages were abundantly established by uncontradicted oral and record evidence. Her defense was that of a mistake of fact, and in support thereof she testified on direct examination by her attorney that her husband, S. C. Hilton, was cruel to her; that he whipped her and abused her; that by reason of his harsh treatment she did not live with him but about two or two and one-half years; that in the month of March, 1944, her mother-in-law and sister-in-law sought to take her children from her in a legal proceeding but the court awarded them to her; that since the court gave her the children she believed that she had been granted a divorce and that she was free to marry again; that it was her understanding that only in divorce proceedings has the court the legal authority and power to make proper disposition of minor children. To contradict and combat her testimony, the District Attorney, in his cross-examination of her, handed her two letters and asked her if she had not written them to her husband, to which she replied that she had. He then, in the presence and hearing of the jury, quoted from one of the letters as follows: "Good morning to the sweetest sailor in Uncle Sam's Navy," and inquired of her if she made that statement, to which she replied, "I imagine it was my husband." An objection was timely made to the question and answer sought to be elicited on the ground that it was a privileged communication between herself and her husband, but the objection was overruled. He then quoted from said letter, in the presence and hearing of the jury, as follows:

"Believe it or not, I've not even had a beer to drink since way before Christmas, and have almost stopped smoking again. Boy, I'm improving, * * * Am going to send the girls some money so they can buy them a new dress apiece. * * * Those are my girls. * * * Am going to send them all their check from now on * * * so when you come back, they can't say, 'Well, where did things go?' * * * We are praying for you and waiting for your safe return. * * *

Lots of Love, as ever, your Wife."

Notwithstanding the fact that this evidence was elicited from her for the purpose of impeachment, yet it contravened Article 714, C. C. P., which provides as follows:

"Neither husband nor wife shall, in any case, testify as to communications made by one to the other, while married; nor shall they, after the marriage relation ceases, be made witnesses as to any such communication made while the marriage relation existed, except in a case where one or the other is prosecuted for an offense; and a declaration or communication made by the wife to the husband, or by the husband to the wife, goes to extenuate or justify an offense for which either is on trial. The husband and wife may, in all criminal actions, be witnesses for each other; but they shall in no case testify against each other except in a criminal prosecution for an offense committed by one against the other."

In the present instance, the court should have sustained appellant's objection to the introduction of the evidence. Appellant had made the written statement to her husband, hence it was a privileged communication and could not be used against her.

In the case of Hearne v. State, 50 Tex. Cr. R. 431, this court said:

"Upon the trial the court permitted the introduction in evidence of certain letters, ten or twelve, alleged to have been written subsequent to the marriage of appellant with C. Wilson, which letters were written by appellant to her. The letters were admitted without any objection on the part of appellant. Subsequently appellant moved to exclude the same from the consideration of the jury, on the ground that they were privileged communications by husband to wife. * * * We hold that these letters were inadmissible. Letters of the wife to the husband, or

husband to the wife, are not admissible evidence in a prosecution for bigamy."

In the case of Adams v. State, 94 Tex. Cr. R. 542, the court held that although the bill of exception disclosed that the letter in question purported to have been written by appellant to his wife during the continuance of the marriage relation was not read to the jury, yet they saw it and heard the question propounded by the State's Attorney and the response made thereto by appellant. The court said:

"We are unable to escape the conclusion that by the procedure, the jury must have understood that the letter which the district attorney had in his hand purported to have been addressed by appellant to his wife purported to bear his signature, though he declined to admit it to be his. * * * Under the law, the fact that he wrote a letter to his wife was not admissible; its contents was not admissible. The inquiry touching either should not have been made, and the objection to the question should have been sustained."

The case of Gross v. State, 61 Tex. Cr. R. 176, 135 S. W. 373. announces the same rule.

In the case of Darnaby v. State, 108 Tex. Cr. R. 408, this court, in passing on the same question as the one before us, speaking through Judge Hawkins, in the opinion on motion for rehearing, used the following language:

"Upon further consideration we have determined that the letter in question was a privileged communication and was not usable by the State for the purpose of impeaching the wife," (citing a number of authorities in support of the principle announced.)

See also Walker v. State, 64 Tex. Cr. R. 70.

The court, in Paragraph 4 of his charge, instructed the jury as follows:

"If, from the evidence in this case, you believe that the defendant, Lorene Hilton, was unlawfully married to William J. Lockard on or about the date alleged in the indictment and if you should further believe that at such time she had a lawful living husband, S. C. Hilton, but you further believe that at the time of such marriage to William J. Lockard, this defendant

honestly believed that she had been divorced from her husband, S. C. Hilton, and that such belief was not the result of a want of the care of an ordinarily prudent person under similar circumstances, or if you have a reasonable doubt thereof, you will find the defendant not guilty."

Appellant in due time objected to said charge on the ground that it was a limitation upon her rights and placed a greater burden upon her than the law required; that it authorized the jury to convict unless they believed that she exercised the care of an ordinary prudent person in ascertaining whether she was divorced and also authorized the jury to convict notwithstanding they found that she honestly believed that she had been divorced. The defensive issue raised by her evidence was not whether or not she exercised that degree of care of an ordinarily prudent person, but whether the mistake, if any, was due to a want of proper care (the degree of care to be exercised depends chiefly on the evidence in each instance), as well as upon the intelligence of the defendant on trial. Consequently, the trial court should not present any particular rule by which the jury were required to determine the issue, but they should be left free to determine it from weighing the evidence and considering the intelligence of the person on trial, as well as all the surrounding facts and circumstances of the case. See Watson v. State, 13 Tex. Cr. App. 76; Busby v. State, 89 Tex. Cr. R. 213; Adams v. State, 110 Tex. Cr. R. 20, 7 S. W. (2d) 528. The better practice is to follow the statute without any attempt to enlarge thereon.

The third complaint passes out of the case by reason of the fact that we sustained her first contention. We admit that we do not understand upon what theory appellant was permitted to testify to cruel treatment of her by her husband, S. C. Hilton, as it was not relevant, nor did it shed any light upon any issue in the case. Neither was it admissible in mitigation of the punishment.

For the errors herein pointed out, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.