James Lee JOHNSON, Appellant,

v.

The STATE of Texas, State.

No. 2–93–514–CR.

Court of Appeals of Texas, Fort Worth.

June 20, 1996.

Rehearing Overruled Aug. 8, 1996.

Elizabeth Horan, Fort Worth (J. Rex Barnett, of counsel), for Appellant.

Tin Curry, Crim. Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of the Appellate Section, Edward L. Wilkinson, Christy Jack, and Phil Sorrells, Asst. Crim. Dist. Attys., Fort Worth, for Appellee.

Before DAY and LIVINGSTON, and PATRICE M. BARRON, JJ. (Assigned).

## OPINION

DAY, Justice.

During voluntary chemical dependency treatment, James Lee Johnson admitted to his drug abuse counselor that he had sexually abused his minor stepdaughter. In July 1991, the drug abuse counselor reported the alleged abuse to the Texas Department of Human Services.[1]

Johnson was charged with four counts of child abuse. The drug abuse counselor testified at trial, over objection, about Johnson's admissions. A jury convicted Johnson of aggravated sexual assault of a child, sexual assault, and two counts of incest. Punishment was assessed by the jury at thirty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice.[2]

On appeal, Johnson asserts that (1) it was error to admit the drug abuse counselor's testimony based on privilege; (2) counsel was ineffective; and (3) there was insufficient evidence to support the conviction. Because we hold there was insufficient evidence to

---

1. At the time of the report, TEX. FAM. CODE ANN. § 34.01 (Vernon Supp.1995) required professionals to report suspected child abuse. Section 1 of Acts 1995, 74th Leg., R.S., ch. 20 reenacted Title 2 and added Title 5 of the Family Code, effective April 20, 1995. Section 2(1) of the Act repealed Title 2 of the Family Code, as that title existed before the effective date of the Act. The former section 34.01 is now found at section 261.101(a) of the Family Code.

2. Punishment was assessed at thirty-five years for aggravated sexual assault (count one), twenty years for aggravated sexual assault (count two), and ten years for each count of incest (counts three and four), to run concurrently.

prove that one of the two counts of incest was committed within the statute of limitations, we reverse and acquit as to that count of the indictment. Additionally, because we hold that it was error for the trial court to allow the counselor's testimony regarding Johnson's admission by not limiting the counselor's testimony to rebut the facts that Johnson himself put at issue, we reverse and remand for a new trial on the remaining three charges.

## THE PRIVILEGED COMMUNICATION CLAIM

The complainant, T.W., was eight years old when her mother married Johnson. T.W. testified that Johnson began fondling her when she was ten years old. Johnson, who weighed over 300 pounds, overpowered the child and forced her to have sexual intercourse, at least once in 1988, and then again in 1990. Johnson warned T.W. not to tell anyone and that no one would believe her. Shortly after the first incident in 1988, T.W. told a brother and a cousin. After the second assault in 1990, T.W. told her grandmother about the abuse.

In point of error one, Johnson complains that the trial court erred in allowing the drug abuse counselor to testify about Johnson's admissions that he had sexually abused his stepdaughter. He argues that the statements were privileged because they were made during voluntary drug abuse counseling, and that their admission was a violation of TEX. R. CRIM. EVID. 510. The statements were made after Johnson volunteered to undergo treatment for "chronic" substance abuse. Specifically, the drug abuse counselor testified that Johnson admitted during a counseling session where Johnson's wife was present that he had sexually abused his stepdaughter.

This case presents an important question of construction and administration of TEX. R. CRIM. EVID. 510. That rule provides:

A communication to any person involved in the treatment or examination of alcohol or drug abuse by a person being treated voluntarily or being examined for admission to treatment for alcohol or drug abuse is not admissible.[3]

TEX. R. CRIM. EVID. 510. Rule 510 was promulgated to replace a similar provision found in Texas Revised Civil Statutes article 5561h, which has since been repealed. As an unfortunate commentary on our society, staggering numbers of citizens suffer from chemical dependency, both from drugs and alcohol. Consequently, there is great social utility gained by encouraging persons with substance abuse problems to voluntarily seek treatment. As an incentive, Rule 510 affords a privilege that fosters unbridled communication by the patient to treating personnel. In essence, our laws recognize that the success or failure of chemical dependency treatment hinges, at least in part, on the free flow of information.[4]

Rule 510 is codified in article V of the Texas Rules of Criminal Evidence under the heading of "Privileges." Indeed, many learned authors have characterized Rule 510 as a privilege. *See, e.g.,* Hulan D. Wendorf et al., TEXAS RULES OF EVIDENCE MANUAL, CIVIL AND CRIMINAL (4th ed. 1995); Steven Goode, et al., TEXAS PRACTICE, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL, Vol. I (2d ed. 1993 & Supp.1996). And while that characterization is not incorrect, Rule 510 differs in some notable respects from the other provisions contained in article V. For example, unlike Rule 503 (lawyer-client privilege) and Rule 504 (husband-wife privilege), the language of Rule 510 omits any reference to the term "privilege." In addition, there is no indication of who may invoke Rule 510 and, more importantly, there are no explicit exceptions to the rule. Substantively, Rule 510 matter-of-factly states that, under certain circumstances, a communication between a patient and a person in-

---

**3.** A similar provision is contained in the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 38.101 (Vernon 1979).

**4.** The privilege occasioned by Rule 510 should neither be confused with nor invoked to undermine the reporting requirements contained within the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 261.101–.109 (Vernon Pamph.1996). A person may comply with the reporting statutes, as in this case, and yet not violate the privilege recognized under Rule 510.

volved in the treatment of chemical dependency is inadmissible. For these reasons, Rule 510 is more akin to an exclusionary rule than a privilege. Nonetheless, for the purposes of our analysis, we will characterize Rule 510 as a "privilege" to avert any confusion.

■ For Rule 510 to apply in a criminal proceeding, there must be a privileged communication. First, the rule requires that the communication be made "by a person being treated voluntarily or being examined for admission to treatment for alcohol or drug abuse." Second, the communication may be directed to "any person involved in the treatment or examination of alcohol or drug abuse." Because Rule 510 does not define the "person" who receives the communication, nonprofessionals involved in the rehabilitation process could find themselves subject to the rule.[5] If the first two criteria are established, then the communication would be subject to exclusion at trial. Once again, because the rule does not define which "communications" are inadmissible, it appears that verbal, nonverbal, and written communications alike would fit within the scope of the exclusion. Of course, as with other privileges, Rule 510 can be waived. *See* TEX. R. CRIM. EVID. 511.

Applied to the case at bar, Johnson voluntarily submitted to chemical dependency treatment at HCA Medical Plaza Hospital, where he was classified as a "chronic" user. While undergoing treatment, Johnson counseled with a drug abuse counselor. At least during the joint counseling session attended by his wife, Johnson admitted to sexually abusing his stepdaughter. A plain reading of Rule 510 would suggest that the drug abuse counselor's testimony would generally be inadmissible.

If elicited by the State during its case-in-chief, the drug abuse counselor's testimony would have been inadmissible under Rule 510. The language used in the rule invites a broad application excluding *all* communications. Unlike its civil counterpart, Rule 510 contains no limitations or exceptions. And unlike the trial court in this case, we decline to establish an exception for admissions of past crimes.[6] Indeed, had the drafters so intended, Rule 510 could have been saddled with numerous exceptions. *See, e.g.,* TEX. R. CRIM. EVID. 504(1)(d) (no husband-wife privilege in "a proceeding in which an accused is charged with a crime against the person of any minor child"); TEX. R. CRIM. EVID. 503(d) (no lawyer-client privilege if services sought or obtained to commit a crime or fraud).

■ We note, however, that in the present case the drug abuse counselor was not called to testify in the State's case-in-chief. In his opening statement, Johnson's attorney stated that "at no time ever, ever did [Johnson's wife] mention this heinous act of violation of her daughter." He also attacked T.W.'s veracity by implying she was lying at her mother's insistence in order to encourage Johnson to reconcile with her mother, whom Johnson had recently left (*i.e.* in the summer of 1991). Specifically, Johnson's counsel stated:

> The evidence will also show that there was a strange coincidence between the time that the Defendant left home, and the alleged victim submitted a report, either verbally or however, that she had been somewhat—that she had been sexually violated. The evidence will show that there was some—this had occurred some three, four years prior to his leaving but only surfaced after he left home.

Johnson's counsel then adduced evidence to support this theory by: having T.W. admit that she voluntarily returned to Johnson's

---

**5.** For example, at trial the State elicited testimony from Johnson's wife, who attended a joint counseling session conducted by the counselor. During that particular session, the wife confronted Johnson about the alleged sexual abuse. She later testified that Johnson's only response was a "funny expression" that she attributed to guilt. Under our analysis of Rule 510, a communication made to *any* person involved in the treatment of chemical dependency, including Johnson's wife, would appear to be inadmissible.

**6.** After Rule 510 was adopted in 1983, the Texas Legislature and the Texas Court of Criminal Appeals eliminated the mental health information privilege for purposes of criminal matters. *See* TEX. REV. CIV. STAT. ANN. art. 5561*h* (repealed as it relates to criminal actions, effective Sept. 1, 1986). This decision, coupled with the plain language of Rule 510, would appear to militate against the judicial creation of exceptions.

house after an extended stay with her grandmother following the first attack; questioning T.W.'s mother about the mother's continuing communications with Johnson after T.W.'s revelations; noting that the mother had not divorced Johnson; and by having Johnson's mother comment on the fact that T.W.'s mother continued to have contact with her and Johnson after the revelations. Finally, Johnson's counsel called Johnson's mother, who testified that Johnson told her he "didn't do anything" to T.W.

■■■ As a general rule, privileges are viewed with disfavor because of their tendency to preclude the introduction of otherwise reliable evidence. This sentiment was articulated in *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), in which the United States Supreme Court stated:

> Testimonial " 'exclusionary rules and privileges contravene the' " fundamental principle that the public ... has a right to every man's evidence. As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."

*Id.* at 50, 100 S.Ct. at 912, 63 L.Ed.2d at 195 (citations omitted). In other words, privileges are more readily accepted when a public interest is being advanced.[7] Moreover, Texas case law is replete with examples of exceptions to privileges or exclusions when a party has "opened the door" by introducing evidence or argument in the forbidden area. *See, e.g., Wilkens v. State,* 847 S.W.2d 547, 550 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 1005, 113 S.Ct. 1646, 123 L.Ed.2d 268 (1993) (State's introduction of testimony from examining psychiatrists to rebut appellant's presentation of an insanity plea is not error—appellant waives his Fifth Amendment rights when he introduced examination evidence to prove his insanity defense); *Draper v. State,* 596 S.W.2d 855, 857 (Tex.Crim.App. [Panel Op.] 1980) (having opened the door by relating some facts of a transaction, a defen-

dant should not be permitted to assert a Fifth Amendment right to prevent disclosure of additional relevant facts) (citing *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951)); *Rodriguez v. State,* 130 Tex.Crim. 438, 94 S.W.2d 476, 478–79 (App. 1936) (when appellant testifies that former plea of guilt was made on attorney's advice that he should so plead, attorney can be called, over objection, to rebut the testimony concerning the privileged information); *Roberts v. State,* 107 Tex.Crim. 139, 295 S.W. 609, 611 (App.1927) (when appellant testifies to contrary facts, State can introduce potentially privileged attorney client communications to rebut the facts); *but see Hilton v. State,* 149 Tex.Crim. 22, 191 S.W.2d 875, 875–76 (App.1945) (wife's letters to husband cannot be used to rebut her testimony under former article 714 of the Code of Criminal Procedure [now see Tex. R. Crim. Evid. 504] ).

We can find no fundamental fairness in allowing a defendant to rely on a privilege or exclusionary rule to protect him from rebuttal when he has made express statements in contradiction of the protected communications. Johnson's strategy of questioning the complainant's motives and veracity opened the door for the State to introduce prior consistent statements. However, because of the privileged nature of the communications in question, any such rebuttal must be narrowly tailored to the facts placed at issue. We hold that the testimony elicited was not appropriately restricted to rebutting Johnson's implications.

During the drug abuse counselor's rebuttal testimony, she stated "[h]is wife confronted him about sexually abusing his—their daughter—her daughter, actually." This testimony specifically rebutted the accusation that T.W.'s mother never mentioned the abuse. However, the State continued and elicited the following testimony:

> [STATE:] What was his response to this confrontation?

---

7. For a commentary on the privileges recognized under the Texas Rules of Evidence, see Hulan D.

Wendorf et al., Texas Rules of Evidence Manual, Civil and Criminal (4th ed.1995).

[DRUG ABUSE COUNSELOR:] He was—he minimized it and he tried to put some of the blame on—

. . . .

[STATE:] Did he admit the sexual abuse?

[DRUG ABUSE COUNSELOR:] Yes, he did.

This testimony did much more than contradict the defense's insinuations that a story was concocted only after Johnson had left and filed for divorce. It specifically alleges that Johnson admitted to the commission of the abuse in question. Because the testimony was not strictly limited to the facts put at issue, we hold that the trial court erred in permitting the drug abuse counselor's testimony concerning those statements.[8]

■ Appellate review of error in criminal cases usually involves a two-step process. *Rose v. State*, 752 S.W.2d 529, 553 (Tex.Crim. App.1987)(op. on reh'g). Having concluded that error occurred in the trial, we must now determine whether the error calls for reversal of the conviction, applying rule 81(b)(2) of the Texas Rules of Appellate Procedure. *Harris v. State*, 790 S.W.2d 568, 584 (Tex. Crim.App.1989). That rule provides that:

If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

Tex. R. App. P. 81(b)(2).

■ Our harmless error analysis must focus upon the error rather than the propriety of the outcome of the trial, trace its probable impact upon the jury, and determine whether it contributed to the conviction or punishment. *Harris*, 790 S.W.2d at 585–87. The impact of the drug abuse counselor's testimony becomes immediately apparent in light of a jury note submitted to the trial court during deliberations. In the note, the presiding juror specifically requested a transcription of the drug abuse counselor's testimony. Importantly, the drug abuse counselor was the only witness who specifically testified about the alleged admissions. We cannot conclude beyond a reasonable doubt that the counselor's testimony did not contribute significantly to the jury's findings of guilt, nor to the punishment assessed. *See Mallory v. State*, 752 S.W.2d 566, 569–70 (Tex.Crim.App.1988); Tex. R. App. P. 81(b)(2). For this reason, we conclude that the erroneous admission of the drug abuse counselor's testimony was harmful and requires reversal.[9] Accordingly, point of error one is sustained.

---

8. The trial court did not admit the testimony solely for rebuttal purposes. In its discussions prior to ruling on admissibility, the trial court stated, "However, I am also of the belief that when a person makes an admission, an incriminating statement or admission, to a drug counselor that does not relate specifically to drug abuse or drug usage, that that [sic] steps outside and beyond the scope of that particular privilege." Thus, the court was allowing the testimony without restriction. It is also clear from the record that the court felt, in the absence of case law, that its decision was "hazardous" and risked reversal, a feeling it repeatedly made clear to the State.

9. The dissent argues that the testimony was admissible based on the belief that the Legislature's enactment of section 34.04 of the Family Code was a legislative determination that that section's exception to the exclusion of evidence on the basis of privilege overrides the privilege granted by Rule of Criminal Evidence 510, a court promulgated rule. We point out again, however, that Code of Criminal Procedure article 38.101, enacted by the Legislature, provides the same exclusion for communications by drug abusers being treated voluntarily, which is a situation covered by the present case.

Civil statutes do have some precedential value in criminal cases where there is no coverage of a point in the criminal rules, codes, or statutes. This is evidenced by the clear hierarchy provided by Rule of Criminal Evidence 101(c), which provides that, in criminal proceedings, the Code of Criminal Procedure takes precedence over civil statutes which, in turn, take precedence over the Rules of Criminal Evidence. *See* Tex.R.Crim. Evid. 101(c). In our view, this hierarchy is found in the Rules of Criminal Evidence in order to remain consistent with the law prior to the promulgation of the rules, and to encompass the former article 38.02 of the Code of Criminal Procedure, which provided: "The rules of evidence prescribed in the statute law of this State in civil suits shall, so far as applicable, govern also in criminal actions *when not in conflict with the provisions of this Code* or of the Penal Code." Acts 1965, 59th Leg., R.S., ch. 722, 1965 Tex. Gen. Laws 317, 465 (repealed by Texas Rules of Criminal Evidence effective Sept. 1, 1986) (em-

## THE SUFFICIENCY OF THE EVIDENCE CLAIM

In point of error three, Johnson contends that because the State did not prove to the jury the date the indictment was presented there was insufficient evidence for the jury to find that the offenses were committed prior to indictment and within the period of limitations.

The State has the burden to prove that an offense was committed within the statute of limitations. *Lemell v. State*, 915 S.W.2d 486, 489 (Tex.Crim.App.1995). The State, however, is not bound by the date "on or about" which an offense is alleged to have been committed, so long as the date proved is before presentment of the indictment and within the limitations period. *McManners v. State*, 592 S.W.2d 622, 623 (Tex.Crim.App. [Panel Op.] 1980); *Gottlich v. State*, 822 S.W.2d 734, 740 (Tex.App.—Fort Worth 1992, pet. ref'd). Because Johnson did not object to defects in the indictment at trial, any errors as to the indictment have been waived. *Lemell*, 915 S.W.2d at 489. However, regardless of Johnson's failure to object to a limitations defect on the face of the indictment, the State is not relieved of its burden at trial of *proving* that the alleged offense occurred within the limitations period. *Id.; Proctor v. State*, 915 S.W.2d 490, 491 (Tex.Crim.App.1995); *State v. Turner*, 898 S.W.2d 303, 307–08 (Tex.Crim.App.1995).

The limitations period applicable to the aggravated sexual assault and sexual assault charges in the present case is ten years. TEX. CODE CRIM. PROC. ANN. arts. 12.01(2)(D), 12.03(d) (Vernon Supp.1996). The applicable limitations period for the two incest charges in this case is three years. *Id.* art. 12.01(5). The record in this case demonstrates that Johnson was indicted on December 16, 1991. The trial began on October 25, 1993. At trial, the indictment was read to the jury, and the trial court took judicial notice of the date of the indictment without objection by Johnson. Testimony placed the dates of one of the sexual assault offenses and one incest offense in the Spring of 1988. Testimony also placed the dates of one sexual assault offense and one incest offense on December 7, 1990.

Because the statute of limitations was not asserted as a defense or otherwise made an issue at trial, it was unnecessary for either party to prove the actual date of the indictment's presentment. *Decker v. State*, 894 S.W.2d 475, 480 (Tex.App.—Austin 1995, pet. ref'd). Although the court judicially noticed the date of the indictment, that date was not an adjudicative fact in this case. *Id.* Because neither the law nor the court's charge obligated it to do so, the State was not required to prove the date of the presentment of the indictment in order to establish Johnson's guilt. *Id.* We also agree with the reasoning of the Houston Court of Appeals (1st Dist.) when the court opined:

> [W]e seriously doubt that the lack of proof to the jury on when the indictment was presented made the jury wonder if the offense occurred *before* the presentment of the indictment. The jury would have had to believe that appellant was indicted for the commission of [the offenses] against this particular complainant on or about this particular date, and then went out and fulfilled the grand jury's prophecy by committing that exact offense.

*Thomas v. State*, 858 S.W.2d 5, 6 (Tex.App.— Houston [1st Dist.] 1993, pet. dism'd).

We hold that the evidence was sufficient to prove that Johnson committed the two offenses of sexual assault and one offense of incest within the statutory limitations period and that a reasonable fact finder could find that the date of the indictment must have been after the offense dates, but before trial. However, it is clear from the record that the State did not prove a second offense of incest was committed within the three-year period preceding the date of the indictment. The indictment was presented on December 16, 1991. The State had to prove that two offenses of incest were committed sometime after December 16, 1988.

phasis added). In the present case, the context of the Family Code provision is in conflict with the Code of Criminal Procedure as well as TEX. R.CRIM. EVID. 510. We are of the firm belief, therefore, that, in this criminal proceeding, the criminal statute must take precedence over the civil statute.

Because the evidence at trial proved that Johnson committed incest in the Spring of 1988 and on December 7, 1991, only one offense was proven as being committed within the three-year period preceding the presentment of the indictment. Accordingly, we hold that the evidence was legally insufficient for a rational juror to find that Johnson committed a second offense of incest within the statute of limitations. Thus, as to the count charging Johnson with incest on or about March 1, 1988, we sustain his point of error and acquit Johnson of that charge. Otherwise, the remainder of point of error three is overruled.[10]

## CONCLUSION

Because there was insufficient evidence to prove that Johnson committed two counts of incest within the applicable statute of limitations, we acquit Johnson of the charge relating to count three of the indictment. Additionally, although we hold that the evidence was sufficient for the jury to find that the remaining count of incest and the two counts of sexual assault were committed within the limitations period, we hold that the trial court improperly admitted harmful evidence when it allowed the drug counselor's testimony that Johnson admitted during a counseling session that he had sexually assaulted his stepdaughter.

Due to our disposition of the first and third points of error, we need not address Johnson's second point of error relating to ineffective assistance of counsel. Accordingly, the judgment of the trial court is reversed, and the case is remanded to the trial court to enter an order of acquittal on count three of the indictment and for a new trial on the remaining charges.

PATRICE M. BARRON, J. (Assigned), filed an opinion dissenting in part and concurring in part.

PATRICE M. BARRON, Justice (Assigned), dissenting in part and concurring in part.

Because I believe the trial judge correctly allowed the drug counselor's testimony, I would affirm the defendant's conviction on counts one, two, and four.

My belief is based on the Legislature's abrogation of the general chemical dependency privilege, in the limited context of child abuse cases: "In *any proceeding regarding the abuse* or neglect *of a child* . . . evidence may not be excluded on the ground of privileged communication except in the case of communications between attorney and client." TEX. FAM. CODE ANN. § 34.04 (Vernon 1986) (emphasis added).[1] "Abuse" is defined with reference to sexual conduct involving a child as defined in the Penal Code. TEX. FAM.CODE ANN. § 261.001(1)(G) (Vernon Pamph.1996). "[R]eports . . . shall be made to: (1) any local or state law enforcement agency. . . ." Act of June 20, 1987, 70th Leg., R.S., ch. 1055, § 1, 1987 Tex. Gen. Laws 3586, 3587 (formerly TEX. FAM. CODE

10. Regarding the two counts of sexual assault and one count of incest that we have found the evidence to be sufficient concerning the dates of the commission of the offenses, we are doubtful that the issues raised in this point of error would require a factual review under the reasoning of the Texas Court of Criminal Appeals' recent decision in *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim.App.1996). We decline, therefore, to engage in such a review because the greatest relief Johnson could expect from such review would be a new trial, a relief already being granted as to these counts due to our holding in point of error one.

1. Section 1 of Acts 1995, 74th Leg., R.S., ch. 20 reenacted Title 2 and added Title 5 of the Family Code, effective April 20, 1995. Section 2(1) of

the Act repealed Title 2 of the Family Code, as that title existed before the effective date of the Act. The former section 34.04 is now found at section 261.202, which now reads: "In a proceeding regarding the abuse or neglect of a child, evidence may not be excluded on the ground of privileged communication except in the case of communications between an attorney and client." TEX. FAM.CODE ANN. § 261.202 (Vernon Pamph.1996).

Because of the version of the Family Code in effect at the time of trial in this case, throughout the remainder of this opinion, where appropriate, I will cite to the former Family Code sections as they appear in the Vernon 1986 bound volume of the TEX. FAM.CODE ANN., unless noted otherwise, and note the new locations as they appear in the Vernon Pamph.1996 of the Code.

ANN. § 34.02).[2] In fact, the failure of *any* person, even an attorney, to report suspected child abuse is itself a Class B misdemeanor. TEX. FAM. CODE ANN. §§ 261.101(c), 261.109 (Vernon Pamph.1996); *Morris v. State*, 833 S.W.2d 624, 626 (Tex.App.—Houston [14th Dist.] 1992, writ ref'd), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).[3]

"The heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute." TEX. GOV'T CODE ANN. § 311.024 (Vernon 1988); *Brooks v. State*, 682 S.W.2d 437, 438 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd, untimely filed). Thus, the fact that the communications are declared nonprivileged in the Family Code should not restrict the purview of such nonprivileged status to civil proceedings brought in the Family Court or to suits affecting the parent-child relationship. "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1988). In construing a statute, the rules of construction are to be resorted to only when the statute is ambiguous. *Texas Water Comm'n v. Brushy Creek Mun. Util. Dist.*, 917 S.W.2d 19, 21 (Tex.1996). The main goal of statutory construction is to effectuate the Legislature's intent, with words and phrases read in context and given their common, everyday meaning unless they have acquired technical or particular meaning. *R.R.E. v. Glenn*, 884 S.W.2d 189, 193 (Tex.App.—Fort Worth 1994, writ denied). Thus, in my view, the counselor's testimony was admissible here, because *"[i]n any proceeding* [4] *regarding the abuse* or neglect *of a child* ... evidence may not be excluded on the ground of privileged communication." TEX. FAM. CODE ANN. § 34.04 (Vernon 1986) (emphasis added).

Any inconsistency in the law is to be removed by reasonable construction, and the statutes and rules must be harmonized where possible. *M.R.R. v. State*, 903 S.W.2d 49, 51 (Tex.App.—San Antonio 1995, no writ). Thus, while the rules of criminal evidence and criminal procedure protect communications made during chemical dependency treatment as privileged, principles of statutory construction militate in favor of an exception to that privilege in the limited context of child abuse cases. First, specific provisions control over general provisions; in other words, the specific situation of child abuse, where there is no privilege, except attorney-client, should control over the broad grant of privilege in any other type of criminal case. *See* TEX. GOV'T CODE ANN. § 311.026 (Vernon 1988); *City of Dallas v. Mitchell*, 870 S.W.2d 21, 22 (Tex.1994); *State v. Kinkle*, 902 S.W.2d 187, 189 (Tex.App.—Houston [14th Dist.] 1995, no pet.). Second, under the doctrine of *in pari materia*, in discerning legislative intent, all laws bearing on the same subject should be considered and given effect. *Kinkle*, 902 S.W.2d at 189; *Reed v. State of Tex. Dep't of Licensing & Regulation*, 820 S.W.2d 1, 2 (Tex.App.—Austin 1991, no writ); 2A N. Singer, STATUTES AND STATUTORY CONSTRUCTION § 51.05 (1984). To do so precludes the application of the chemical dependency counselor privilege in the context of a criminal prosecution for child sexual abuse. Third, under the doctrine of *expessio unius* [5] had the Legislature intended to except chemical dependency counselors from the requirement of testifying in any proceeding involving child abuse, it would have done so expressly, as has been done with the attorney-client exception. *See* TEX. FAM. CODE ANN. § 34.04 (Vernon 1986); *see also*

**2.** The former section 34.02 is now encompassed in TEX. FAM.CODE ANN. § 261.103 (Vernon Pamph. 1996).

**3.** Former section 34.07 did not expressly include even those persons whose communications may otherwise be privileged, such as attorneys. In the 1995 amendments, the Legislature expressly included such privileged persons in the reporting requirement. *See* TEX. FAM.CODE ANN. § 261.101(c) (Vernon Pamph.1996).

**4.** It is interesting to note that the Legislature did *not* limit the abrogation of privileges to "suit[s]"

or "suit[s] affecting the parent-child relationship," which are defined in the statute. *See* TEX. FAM.CODE ANN. §§ 101.031, 101.032 (Vernon Pamph.1996) (formerly § 11.01(5)).

**5.** The express mention or enumeration of one thing is like an express exclusion of all others. *Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex.1978); *Maley v. 7111 Southwest Freeway, Inc.*, 843 S.W.2d 229, 231 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

Fenton, *Texas' Clergyman–Penitent Privilege and the Duty to Report Suspected Child Abuse,* 38 BAYLOR L. REV. 231, 241–42 (1986).

Most importantly, court promulgated rules of evidence and procedure cannot override legislatively granted substantive rights. This is because the court's rulemaking power, granted by the Legislature, does not allow the court to "abridge, enlarge, or modify the substantive rights of a litigant." TEX. GOV'T CODE ANN. §§ 22.108(a), 22.109(a) (Vernon 1988). Thus, in my view, a reasonable construction of the laws is that the Texas Legislature saw fit to give child abuse victims the substantive right to have chemical dependency counselors testify in actions brought on the victim's behalf which are aimed at stopping the abuse. Similarly, in cases of child abuse the Legislature expressly disallowed a defendant's right to have evidence excluded based on privilege (other than the attorney-client privilege). The courts cannot enlarge those substantive rights. The Legislature made the policy determination that stopping child molestation is more important than chemical dependency counseling and treatment. It is my belief that it is not for the courts to override this legislative determination, through rulemaking, procedure or case law.

For these reasons, I respectfully dissent from the majority's reversal of appellant's conviction on counts one, two, and four. I would affirm the conviction on those counts. In all other respects, I concur in the result only of the majority's opinion.

