**UNITED STATES of America**

v.

**Warren Todd HOEFFNER.**

**Crim.A. No. H–07–263.**

United States District Court,
S.D. Texas,
Houston Division.

Dec. 8, 2008.

---

John R. Braddock, Quincy L. Ollison, Belinda A. Beek, U.S. Attorney's Office, Houston, TX, for United States of America.

Chris Flood, Flood & Flood, Lynne Liberato, Haynes & Boone LLP, Houston, TX, John Timblin Flood, Flood & Flood, Corpus Christi, TX, Thad Behrens, Haynes & Boone LLP, Dallas, TX, for Warren Todd Hoeffner.

Dan Lamar Cogdell, James Madison Ardoin, Cogdell Law Group, Houston TX, for Rachel Rossow.

Paul Constantine Nugent, Foreman, Degeurin & Nugent, Houston, TX, for John Prestage.

*ORDER*

DAVID HITTNER, District Judge.

Pending before the Court are Non–Party Liberty Mutual Group, Inc.'s *Motion to Quash Subpoena* (Document No. 170), *Motion to Quash Hoeffner's Subpoena for Docu-*

ments Served on The Hartford (Document No. 175), Motion to Quash Subpoena and Objections to Subpoena Duces Tecum Served on Non–Party The Travelers Companies, Inc. (Document No. 176), Non–Party, National Casualty Company's Motion to Quash (Document No. 181), Non–Party Continental Casualty Company's Motion to Quash Subpoena (Document No. 182), and Non–Party National Union Fire Insurance Company of Pittsburgh, PA's Motion to Quash Subpoena (Document No. 185).

Having considered the initial motion filed by Defendant Hoeffner, the pending motions to quash filed by the aforementioned non-parties, oral argument at a hearing held on December 5, 2008, and applicable law, the Court determines Liberty Mutual Group, Inc., The Travelers Companies, Inc., National Casualty Company, Continental Casualty Company, and National Union Fire Insurance Company of Pittsburgh, PA's motions to quash should be granted and The Hartford's motion to quash should be granted in part and denied in part.

## BACKGROUND

Defendant Warren Todd Hoeffner ("Hoeffner"), an attorney, negotiated silicosis settlements between his clients and The Hartford Financial Services Group, Inc. ("The Hartford") from 2002 to 2004. On June 25, 2007, the grand jury indicted Hoeffner and two former employees of The Hartford, Rachel Rossow ("Rossow") and John Prestage ("Prestage").[1] According to the United States of America ("Government"), Hoeffner, Rossow, and Prestage engaged in a scheme that caused The Hartford to pay $34 million in settlement funds to Hoeffner's clients. The Government alleges that as a result of this scheme among Hoeffner, Rossow, and Prestage, Hoeffner—unbeknownst to The Hartford—funneled $3 million in settlement

funds to Rossow and Prestage in the form of bribes and kickbacks.

On November 20, 2008, Hoeffner moved the Court, pursuant to Federal Rule of Criminal Procedure 17(c), to grant leave to issue subpoenas *duces tecum* on certain non-parties. On November 24, 2008, the Court granted Hoeffner leave to issue subpoenas but noted in its order that it would entertain motions to quash timely filed by the non-parties.[2] Through the subpoenas, Hoeffner seeks documents pertaining to the following five requests from non-party insurance companies Liberty Mutual Group, Inc. ("Liberty Mutual"), The Travelers Companies, Inc. ("Travelers"), National Casualty Company ("National Casualty"), Continental Casualty Company ("Continental Casualty"), and National Union Fire Insurance Company of Pittsburgh, PA ("National Union"):

1. Notes, e-mails, and documents concerning internal meetings, discussions, and roundtables by anyone employed by you regarding the Hoeffner Inventory Settlements;

2. Notes, e-mails, and documents evidencing or reflecting the approval given or consent granted by you for the Hoeffner Inventory Settlements;

3. Documents concerning the benefits and cost savings you projected you might receive, or that you actually received, from entering into the Hoeffner Inventory Settlements;

4. Defense counsel recommendations, whether by inside or outside counsel, concerning the Hoeffner Inventory Settlements; and

5. Documents evidencing or reflecting any cession by you to your reinsurers of any portion of the Hoeffner Inventory Settlements.

Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union

---

**1.** The Court previously granted Rossow and Prestage's motions to sever. Rossow and Prestage will proceed to trial together after Hoeffner's trial. Hoeffner's trial is set to commence on January 6, 2009.

**2.** The Court scheduled a hearing for December 5, 2008 to hear oral argument on the pending mo-

tions to quash. Counsel for Defendant Hoeffner appeared in person at the hearing and by telephone. Counsel for Defendant Rossow and the non-parties were present at the hearing. Counsel for Defendant Prestage appeared by telephone. Likewise, representatives from the Government were in attendance.

object to these requests, arguing that the subpoenas should be quashed as a matter of law pursuant to Federal Rule of Criminal Procedure 17(c)(2) because they are oppressive and unreasonable. *See* Fed.R.Crim.P. 17(c)(2) (providing that a district court, "on motion made promptly, ... may quash or modify the subpoena if compliance would be unreasonable or oppressive").

As to non-party The Hartford only, Hoeffner seeks, *inter alia,* the following:

1. Documents, notes, and e-mails that Andrew Pinkes and John Kinney relied on to support the "Pinkes memo" dated April 23, 2004, to Neil Wolin regarding the Hoeffner Inventory Settlements, including the subsequent "final draft" of the e-mail;

4. Defense counsel recommendations, loss cost savings reports, and roundtable memoranda related to the settlement of Hoeffner inventory claimants for the following Hartford insureds: Warner Lambert/American Optical, Lone Star Industries, Inc., Clemco Industries, Big–Three Industries, Ottawa Silica Co., 3M Company, Bob Schmidt, Inc., and Vallen Corp.; and

6. Documents and correspondence of defense counsel billings for Empire, Gifford–Hill, Ideal Basic, Mine Safety Appliances, Oglebay Norton, Pauli & Griffin, and Pulmosan for calendar years 2002, 2003, and 2004.

The Hartford objects to Requests 1, 4, and 6 only, arguing they are not relevant, not specific, and duplicative of previous disclosures. Additionally, The Hartford argues the subpoena should be quashed because it is overbroad, burdensome, and seeks documents that are privileged and protected communications.

Hoeffner argues he needs the documents requested in the subpoenas to support his defense that the settlement amounts at issue in the indictment were appropriate. According to Hoeffner, the Government is alleging that the settlement amounts were inappropriate and that the approval process was tainted.[3] Thus, Hoeffner argues that if he can demonstrate that the settlement amounts were appropriate—that The Hartford carefully evaluated and fully vetted the settlements at issue in the indictment before paying Hoeffner's clients' claims—this will exculpate him of any wrongdoing. Accordingly, the Court must determine whether the motions to quash should be granted.

## LAW & ANALYSIS

Federal Rule of Criminal Procedure 17(c) governs the issuance of subpoenas *duces tecum* in federal criminal proceedings.[4] *United States v. Nixon,* 418 U.S. 683, 697–98, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Every Rule 17(c) subpoena must be a "good faith effort ... to obtain evidence," and the court's power to quash or modify subpoenas may be used to ensure that Rule 17(c) is used only for that purpose. *United States v. Arditti,* 955 F.2d 331 (5th Cir.), *cert. denied,* 113 S.Ct. 597 (1992). A subpoena under Rule 17 cannot be used to circumvent the limitations on discovery mandated by Rule 16. *Arditti,* 955 F.2d at 346. Moreover, "Rule 17(c) was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220, 71 S.Ct. 675, 95 L.Ed. 879 (1951).

The party seeking access to materials under a Rule 17(c) subpoena bears the burden of showing the subpoenaed document: (1) is relevant; (2) is admissible; and (3) has been requested with adequate specificity. *Id.* The documents must have "real relevance to the particular counts for which

---

**3.** The Court in no way implies that this is indeed the Government's theory of the case.

**4.** Rule 17(c) provides:

(1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

(2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

Fed.R.Crim.P. 17(c).

[the defendant] was charged." *United States v. Butler,* 429 F.3d 140, 149 (5th Cir.2005). Admissibility requires a movant to make a sufficient preliminary showing that the requested material contains evidence admissible with respect to the offenses charged in the indictment. *United States v. Skilling,* Crim. No. H–04–025, 2006 WL 1006622, at \*3 (S.D.Tex. Apr. 13, 2006). Specificity serves to prevent a subpoena from being converted into a license for a "fishing expedition to see what may turn up." *Id.* at \*2 (explaining the specificity requirement is intended to provide the subpoenaed party with enough knowledge about the documents being requested to lodge objections based on relevancy and admissibility).

A. *Subpoenas Served on Non-Parties Liberty Mutual, Travelers, National Casualty, Continental Casualty, & National Union* [5]

Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union move the Court to quash the subpoenas because requiring the production of such documents is unreasonable and oppressive. The Court notes at the outset that each request in the subpoenas seeks information regarding the "Hoeffner Inventory Settlements" from the time period of January 1, 2001 through December 31, 2004. The instructions and definitions define "Hoeffner Inventory Settlements" as "the global inventory silicosis settlements, and each such global settlements, that were reached in 2002 between Hoeffner's clients" and a list of identified companies: Empire Abrasive Equipment Corporation, Gifford–Hill & Company, Humble Sand & Gravel, Inc., Ideal Basic Industries, Inc., Mine Safety Appliances, Pauli & Griffin Company, Oglebay Norton Industrial Sands, Inc., and Pulmosan Safety Equipment Corporation. The aforementioned "identified companies"—Empire Abrasive Equipment Corporation, Gifford–Hill & Company, Humble Sand & Gravel, Inc., Ideal Basic Industries, Inc., Mine Safety Appliances, Pauli & Griffin Company, Oglebay Norton Industrial

Sands, Inc., and Pulmosan Safety Equipment Corporation—are Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union's insureds.

The non-parties object to the subpoenas because they aver the subpoenas seek to have Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union produce privileged and protected documents concerning settlements that Hoeffner's clients reached with their insureds. For example, Hoeffner seeks "documents concerning internal meetings, discussions and roundtables," "documents evidencing or reflecting the approval given or consent granted" for the Hoeffner Inventory Settlements, and "[d]efense counsel recommendations." Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union aver that the requested documents are protected by the attorney-client, work product, offers to compromise, and potentially, alternative dispute resolution protections and privileges.

"Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). At least one federal district court in this circuit has found that the attorney-client privilege extends to communications between an insurer and its insured. *See Metroflight, Inc. v. Argonaut Ins. Co.,* 403 F.Supp. 1195, 1197 (N.D.Tex. 1975) (recognizing that statements by an insured to his liability insurer's agent were protected from disclosure by the attorney-client privilege where it appeared that the communication was intended for the assistance of the insurer's attorney in the defense of a possible claim against the insured). This extension is premised upon the understanding that such communications are shared with counsel for purposes of defending the legal interests of the insured. *See Kerner v. Terminix Int'l Co.,* Civ. A. No. 2:04–cv–0735, 2008 WL 321267, at \*3

---

**5.** Because the subpoenas *duces tecum* served on Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union seek the same five categories of documents, and because the non-parties' objections are essentially the same, the Court addresses their objections together.

(S.D.Ohio Jan. 31, 2008) (citing *Metroflight, Inc.*). Here, the Court finds the documents requested in the subpoenas seek communications that were prepared to assist with the defense of claims against Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union's insureds. Because compliance with the subpoenas would require the disclosure of privileged and protected matter to which no exception to waiver would apply, and any disclosure would necessarily waive these privileges, the Court finds compliance would be unreasonable and oppressive under Rule 17(c)(2).[6]

The Court finds the subpoenas should also be quashed for other reasons. First, the subpoenas should be quashed because they seek documents regarding payments by Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union to Hoeffner's clients that are entirely distinct from the payments made by The Hartford to Hoeffner's clients that are at issue in this case. In other words, payments made by Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union are not relevant because these payments are not part of the alleged conspiracy described in the indictment. Indeed, Hoeffner has provided the Court with no evidence to conclude that the factual circumstances surrounding The Hartford's settlements with Hoeffner's clients involved the same policies, negotiations, claims analysis, and settlement terms as the settlements with Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union. Thus, the Court finds Hoeffner fails to establish that the documents are relevant and/or admissible. *See Butler*, 429 F.3d at 149 (explaining that documents must have "real relevance to the particular counts for which [the defendant] was charged"). Second, the subpoenas should be quashed because Hoeffner's requested production of the documents "instan-

ter" is unreasonable and oppressive. The subpoenas seek documents spanning a four-year period of time, and the non-parties unanimously represent that their files are not organized according to the clients or entities represented by Hoeffner. Therefore, the Court finds immediate production is simply impossible.[7] Lastly, the subpoenas should be quashed with respect to Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union because they seek documents and information containing statements by non-parties, who are not expected to be Government witnesses, that are beyond what is relevant to this criminal suit. *See United States v. Salerno*, 796 F.Supp. 1099, 1106 (N.D.Ill.1991) ("With respect to third-parties who are not expected to be government witnesses, statements made by them even though they may incorporate a defendant's own statements, are not discoverable under Rule 16.").

### B. SUBPOENA SERVED ON NON-PARTY THE HARTFORD

The Hartford moves the Court to quash Requests 1, 4 and 6 of the subpoena pursuant to Rule 17(c)(2). Specifically, The Hartford argues Requests 1 and 4 should be quashed as irrelevant and burdensome and that Requests 4 and 6 should be quashed because the requests seek privileged information. The Court addresses The Hartford's objections to Requests 4 and 6 first.

■ In Request 4, Hoeffner seeks defense counsel recommendations, loss cost savings reports and roundtable memoranda related to the settlement of Hoeffner inventory claimants for Warner Lambert/American Optical, Lone Star Industries, Inc., Clemco Industries, Big–Three Industries, Ottawa Silica Co., 3M Company, Bob Schmidt, Inc., and Vallen Corp., all insureds of The Hartford. The Hartford argues that documents responsive to this request are irrelevant because

---

**6.** Several of the non-parties noted in their motions that requiring them to turn over their insured's files to Hoeffner, a plaintiff's attorney specializing in silicosis claims, would be "particularly unreasonable" given that many of the insureds are currently engaged in defending similar silicosis claims, and the documents sought contain confidential and proprietary commercial information regarding both the insurers and their insureds.

**7.** Because trial is less than one month away, the Court declines to modify the time for compliance. In any event, compliance at a later date would be futile as the Court has previously determined the documents are not relevant.

none of the seven insureds are named or are at issue in the indictment. The Hartford also argues that documents responsive to Request 4 contain privileged and protected communications concerning The Hartford's insureds. The Court agrees. As previously discussed in relation to the privileged requests sought from Liberty Mutual, Travelers, National Casualty, Continental Casualty, and National Union, compliance with the subpoena would require the disclosure of privileged or other protected matter to which no exception to waiver would apply, and any disclosure would necessarily waive these privileges. Moreover, because none of the seven insureds mentioned in Request 4 are alleged to be part of the scheme to defraud, and the settlements associated with these insureds are unrelated to the charges alleged in the indictment, the Court finds the information sought is neither relevant nor admissible. *See Butler*, 429 F.3d at 149.

■ The Hartford similarly objects to Request 6 as seeking privileged and confidential information. In Request 6, Hoeffner seeks documents and correspondence of defense counsel billings for Empire, Gifford–Hill, Ideal Basic, Mine Safety Appliances, Oglebay Norton, Pauli & Griffin, and Pulmosan for calendar years 2002, 2003, and 2004. The Hartford asserts the billing records contain information that is subject to the attorney-client and work product privileges of The Hartford and its insureds, Empire, Gifford–Hill, Ideal Basic, Mine Safety Appliances, Oglebay Norton, Pauli & Griffin, and Pulmosan. Although The Hartford previously agreed to waive whatever privilege it has pertaining to documents responsive to Request 6, the Court recognizes that complying with Request 6 implicates not just The Hartford's privileges but also those of its insureds. Therefore, because Request 6 seeks documents and correspondence of defense counsel reflecting work undertaken on the insureds' behalf in anticipation of litigation, and complying with this request would waive the attorney-client privilege as it pertains to The Hartford's insureds, the Court finds complying with this request would be unreasonable and oppressive under Rule 17(c)(2). *See Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir.1999) ("[T]he research undertaken by an attorney to respond to a client's request also falls within the reaches of the attorney-client privilege."); *Clarke v. Am. Commerce Natl. Bank*, 974 F.2d 127, 129 (9th Cir.1992) ("correspondence, bills, ledgers, statements, and time records which ... reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege").

■ In Request 1, Hoeffner seeks documents, notes and e-mails that Andrew Pinkes, Senior Vice President of The Hartford, and John Kinney, Vice President of The Hartford, relied on to support the "Pinkes memo" dated April 23, 2004, to Neil Wolin, Executive Vice President and General Counsel of The Hartford, regarding the Hoeffner Inventory Settlements, including the subsequent "final draft" of the email. The Hartford asserts the documents responsive to this request are not exculpatory or even relevant to the alleged bribery scheme, and the request is not specific because it fails to identify a document that can be readily identified. At the December 5 hearing, counsel for Hoeffner clarified the request and stated that Hoeffner seeks the following specific documents that were referenced or alluded to in the Pinkes memo: (1) documents, notes, and e-mails relied upon to support Pinkes and Kinney's statement that "[t]here is a fair amount of email traffic indicating that direct settlement discussions were occurring almost exclusively between [Rossow, Prestage, Dave Anderson, and Hoeffner]"; (2) documents, notes, and e-mails relied upon to support Pinkes and Kinney's statement that "there is variety of other evidence that indicates other carriers did not approve of [Rossow and Prestage's] approach of conducting discussions without the involvement of other carriers and/or policyholders"; (3) documents, notes, and e-mails relied upon to support Pinkes and Kinney's statement that "[e]vidence indicates that CaLMS handler on the account, Nevena Stefanova, felt 'intimidated' by [Rossow] to support the [Empire Abrasives] agreement"; (4) documents, notes, and e-mails relied upon to support Pinkes and Kinney's statement that they "attached At-

torney [Eva] Geer's statement to this memo explaining her view on how [Rossow and Prestage] handled [the Pauli & Griffin] account"; and (5) documents, notes, and e-mails relied upon to support Pinkes and Kinney's statement that they "attached Susan Smith's statement to this memo which describes her dispute with [Rossow] over whether Oglebay [Norton] should enter into the Hoeffner settlement."

The aforementioned enumerated requests, described and identified by Hoeffner's counsel at the December 5 hearing, are specific. Although the Court recognizes The Hartford's position that there is no evidence the Government relied upon the Pinkes memo in framing the charges alleged in the indictment, the Court is also cognizant of Hoeffner's right to adequately present evidence that supports his defensive theory. In sum, the Court finds that compliance with Request 1, limited to the specific documents identified by Hoeffner's counsel at the December 5 hearing, is neither unreasonable nor oppressive.[8] Based on all the foregoing, the Court hereby

ORDERS that Non–Party Liberty Mutual Group, Inc.'s Motion to Quash Subpoena (Document No. 170) is GRANTED. The Court further

ORDERS that Motion to Quash Hoeffner's Subpoena for Documents Served on The Hartford (Document No. 175) is GRANTED IN PART and DENIED IN PART. The motion to quash the subpoena *duces tecum* is GRANTED as to Requests 4 and 6. However, the motion to quash the subpoena *duces tecum* is DENIED as to Request 1. At or before noon on Monday, December 15, 2008, The Hartford shall produce to counsel for Defendant Warren Todd Hoeffner copies of documents that are responsive to Request 1. The Court further

**8.** Indeed, counsel for The Hartford indicated at the December 5 hearing that The Hartford intended to search for and produce documents responsive to Request 1.

**9.** The Court ordered that any motion to quash should be filed within three business days of being served with the subpoena. Because the subpoena was not served on National Union's

ORDERS that Motion to Quash Subpoena and Objections to Subpoena Duces Tecum Served on Non–Party The Travelers Companies, Inc. (Document No. 176) is GRANTED. The Court further

ORDERS that Non–Party, National Casualty Company's Motion to Quash (Document No. 181) is GRANTED. The Court further

ORDERS that Non–Party Continental Casualty Company's Motion to Quash Subpoena (Document No. 182) is GRANTED. The Court further

ORDERS that Non–Party National Union Fire Insurance Company of Pittsburgh, PA's Motion to Quash Subpoena (Document No. 185) is GRANTED.[9]

All other relief not expressly granted herein is DENIED.

registered agent, National Union avers it was not aware of the subpoena within sufficient time to comply with the Court's three-day deadline. Because National Union filed its motion to quash as promptly as possible under the circumstances and appeared at the Court's December 5, 2008 hearing, the Court entertains National Union's motion as timely.